The defendant is engaged in the business of operating public parking lots in various cities of Connecticut, one of which is located at 125 East Main Street, in downtown Waterbury. This lot has an open frontage on the northerly side of East Main Street of 70 feet and a depth of 270 feet. To the west there is another public parking lot with no physical barrier between. To the east there is a theater building. To the north or rear there is an embankment and a business building. At the northeast corner there is an alleyway 14 feet in width, which runs 256 feet to the east out to Brown Street, and which is used in connection with the purposes of the lot in question.
At about 8 o'clock on the evening of November 22, 1946, the plaintiff drove her car into the defendant's Waterbury lot, turned it over either to the defendant himself or to an attendant who parked it for her in an available space, paid the customary charge of twenty-five cents, took back a ticket, of which a detached part was placed on the car, and left the premises to attend a nearby theater. It appears that the actual parking of the car took place after the plaintiff left the lot. The key was left in the switch after the car was parked. A few minutes before 11 o'clock the plaintiff returned to the lot to get her car. It was not to be found. There is no question but that the car was stolen between the time the plaintiff turned it over to be parked for her and the time she returned to drive it home. The theft of the car had not been observed and was not disclosed until the plaintiff returned for it. On the early morning of the following day the car was found by the police in a damaged condition a few blocks away from the lot.
In this action the plaintiff seeks to recover damages of the defendant for repairs required to the car and for loss of use. The complaint is in two counts, contract and negligence, each of which basically alleges the relationship of bailor and bailee between the parties. Specific allegations are not required to be stated beyond this reference.
At this time the court is only concerned with the question of liability on the evidence submitted to date. The defendant contests liability on the following grounds: (1) a license relationship only was created and not bailment; (2) even though it be found that the relationship was that of bailor and bailee, there is no liability because (a) the ticket given to the plaintiff when *Page 376 
she left the car with the defendant, and which she admittedly read, stated thereon: "Management assumes no responsibility of any kind. Charges are for rental of space from 8 a. m. to 11 p. m. Not responsible for articles left in or on car. Agree to the within terms"; and (b) a posted sign over the office cabin on the lot read: "Charges are for use of parking space until 11 p. m. Not responsible for cars left open after 11 p. m. You may lock your car"; (3) the evidence does not establish that the theft of the car was due to any fault on the part of the defendant.
Our Supreme Court to date has not been called upon to consider the liability of a parking lot operator to a patron whose car has been stolen during the period it was on the lot. There has been, however, considerable litigation on the subject and appellate reviews in other jurisdictions. See note, 131 A. L. R. 1175, and article entitled "The Parking Lot Cases" by Laurence M. Jones, 27 Georgetown Law Journal 162 (December, 1938). The introductory paragraph of Professor Jones's article well states the basic problem in these words: "Thousands of automobiles are driven into parking lots and left in charge of attendants without any consideration of the legal relation thus established between the parking lot operator and the owner of the car. The problem is new, one might almost say it has arisen within the last decade, for although there are a few cases arising before then they do not involve the typical parking lot situation. Like all new situations it has given the courts some trouble. Most of the difficulty has arisen from an attempt to apply settled principles of law to a new problem, from an attempt to apply an old rule to a new case. The courts have proceeded by a method which has well been termed a `jurisprudence of conceptions.' They have tried to fit the relation existing between the owner of the parked automobile and the operator of the parking lot into one of the recognized legal relations of bailor-bailee, lessor-lessee, or licensor-licensee, and then assumed that the obligations of the parties flowed automatically from that relationship. However much we may abhor that method of approach, since courts and lawyers do think and speak in terms of bailment, lease, or license, it seems worth while to consider the parking lot cases and to determine, if possible, which of the above terms most accurately describes the relation."
A few more facts should be stated. There are two entrances, one being on East Main Street and the other out to Brown *Page 377 
Street. The latter entrance is closed off at 9 p. m., thus leaving only the East Main Street side available for egress and ingress. On the night in question the defendant and two employees were on duty. The lot can hold 165 cars at one time. When the plaintiff returned to get her car the defendant and his two employees were on the lot. Whether the three had been constantly on the premises between the time the plaintiff left her car and the time she returned for it does not definitely appear. The purpose of giving a patron a ticket and placing a detached part thereof on the car is for identification. A patron may park his own car or have it done for him. A patron may leave the key in the switch or take it away at his election. As to cars left with keys in the switch, as was the plaintiff's the defendant and his employees move them about as occasion requires in making room for other cars or in assisting other cars to make an exit. The defendant testified he felt that he had the right to do so, and constantly did so. Whether or not the plaintiff's car was so moved by the defendant or an employee on the night in question does not appear. It was the policy of the defendant to insist that a person coming upon the lot to drive off a car present his ticket before doing so, unless such person was actually known to the defendant or his employees. During the past several years the defendant in his various parking lots annually takes care of over one hundred thousand cars and to date seven only have been stolen. Lastly, it is found as a fact that the plaintiff returned for her car shortly before 11 p. m., notwithstanding the defendant's notation of loss was made at 11:10 p. m.
The relationship between the plaintiff and the defendant is determined to be that of bailor and bailee. See discussion in the following cases: Galowitz v. Magner, 203 N.Y.S. 421; Quinn
v. Milner, 34 A.2d 259 (Mun. Ct. of App., Washington, D.C.); Agricultural Ins. Co. v. Constantine, 144 Ohio St. 275.
The printed provision on the parking ticket which states that the defendant "assumes no responsibility of any kind," though read by the plaintiff, is held not in itself to bar her from a recovery. Some of the cases on this point disclose that the car owner did not read the provision disclaiming responsibility. See, for example, Sandler v. Commonwealth Station Co.,307 Mass. 470; Galowitz v. Magner, supra; and in others this point is not made clear. See Wendt v. Sley System Garages, 124 Pa. Super. 224;Mee v. Sley System Garages 124 Pa. Super. 230; Quinn *Page 378 
v. Milner, supra; Agricultural Ins. Co. v. Constantine, supra. The court in the latter case — and one of the most recent — quotes (p. 283) from 6 Am. Jur. 270, as follows: "It is now apparently well settled that a bailee for hire cannot, by contract, exempt himself from liability for his own negligence or that of his agents or servants.... Contracts limiting liability for negligence in bailments for hire in the course of a general dealing with the public are generally regarded as against public policy.'" This proposition of law is deemed fatal to the defendant's position regarding the printed provision on the ticket. Notwithstanding the fact that the plaintiff read the provision on the ticket when given her, it is held that the defendant on the ground of public policy did not thereby exonerate himself from a liability which otherwise may attach to him under some phase of the law of bailment. The printed notice on the lot requires no special discussion in view of the facts hereinbefore considered.
It now remains to consider the last question, listed as (3). The Court is of the opinion that under the negligence count the plaintiff initially made out a prima facie case even in the absence of affirmative proof of negligence. "The failure of the bailee to perform his contract to return the goods raises a presumption that their nonproduction is due to the negligence of the bailee, and by proof of such nonproduction the bailor makes out a prima facie case of negligence...." Murray v. ParamountPetroleum Products Co., 101 Conn. 238, 242; see also O'Dea
v. Amodeo, 118 Conn. 58, 63. The presumption of negligence which constitutes the prima facie case "may be overcome by the bailee by any explanation which shall satisfy the trier that the loss was not due to his failure to exercise reasonable care in the custody of the goods." Murray v. Paramount Petroleum Products Co., supra. "In such a situation the policy of the law requires that, unless the defendant proves the actual circumstances involved in the loss of the goods, the plaintiff should prevail; if the defendant does prove those circumstances, then the burden of showing that upon the whole case he was negligent rests upon the plaintiff. See Morgan, 47 Harvard Law Review, 59, 70." O'Dea v. Amodeo, supra.
Quotations from three of the parking lot cases of other jurisdictions have application. "It is therefore our conclusion that in an action brought by a bailor against a bailee for hire, a primafacie case is established where the bailor proves delivery of the bailed property in good condition and the failure of the bailee *Page 379 
to redeliver upon legal demand. Upon proof of such state of facts the burden of proceeding with the evidence shifts to the bailee to explain his failure to redeliver, and where the bailee proves loss of the bailed property by the but attempts no explanation of the circumstances and offers no proof of facts from which an inference of due care may be drawn, he does not thereby rebut the presumption of negligence or want of due care arising from his failure to redeliver. The burden of proof remains upon the bailor to prove by a preponderance of all the evidence that the bailee was guilty of negligence or failure to exercise due care." Agricultural Ins. Co. v. Constantine, supra. 288. "If the theft occurred when an attendant was present a finding was warranted that he was negligent in not knowing of the attempt to steal and preventing it. If, on the other hand, the theft occurred when no attendant was present, no precautions whatever were then being used by the defendant to protect the plaintiff's automobile. It could be found that the theft of the plaintiff's automobile was a natural and probable result of negligence for the consequence of which the defendant was responsible."Sandler v. Commonwealth Station Co., supra, 474. "The proof in this case is very meager, but is in my opinion sufficient to present a question of fact for the jury. While a space is (used) ... for parking cars, with an entrance and an exit, a checking system, and three attendants to look after and take care of cars as they came in and went out, the jury might infer that the theft of the plaintiff's car could not have occurred had defendant and his employees properly performed their duty. Indeed, it seems to me that such an inference is well-nigh irresistible, because some one must have taken out the plaintiff's car without presenting a check or ticket therefor, and to permit this was clearly negligent." Galowitz v. Magner, supra, 424.
The defendant is held liable to the plaintiff for resulting damages.
 Counsel will arrange for a hearing in damages at a time mutually agreeable to all concerned. This accords with the agreement of court and counsel in the event liability was determined on the part of the defendant.