STANLEY HARTMANN *v.* BLACK & DECKER
MANUFACTURING COMPANY ET AL.
(5300)
(5983)

DUPONT, C. J., DALY and O'CONNELL, Js.

Argued April 12—decision released September 6, 1988

*William F. Gallagher,* with whom, on the brief, were *Carl E. Cella* and *Evelyn A. Barnum,* for the appellant (defendant J & S Hydraulics, Inc.).

*David N. Rosen,* for the appellee-appellant (plaintiff).

*Jeremy G. Zimmermann,* with whom, on the brief, was *Brian J. Casey,* for the appellee (named defendant).

DUPONT, C. J. The plaintiff brought this action seeking damages for injuries he suffered while operating a radial arm saw manufactured by the defendant Black & Decker Manufacturing Company (Black & Decker) and owned by the defendant J & S Hydraulics, Inc. (J & S), the plaintiff's employer. The trial court rendered judgment in favor of Black & Decker and in favor of the plaintiff against J & S, in accordance with the jury's

verdict. J & S appeals from the judgment rendered for the plaintiff and the plaintiff appeals from the judgment for Black & Decker.

The jury could reasonably have found the following facts. The plaintiff, a mechanical engineer, was employed as a draftsman and designer of hydraulic equipment by J & S, a corporation which designed, repaired and manufactured hydraulic equipment. J & S maintained on its premises numerous machines used in the course of its business, including a radial arm saw manufactured by Black & Decker. On January 24, 1979, the plaintiff, after regular working hours, was operating the radial arm saw for the construction of a workbench, a personal project of the plaintiff. Such after-hours personal use of machinery was permitted by J & S, was frequently exercised by its employees, and was regarded as a fringe benefit of employment. Earlier on that date, the plaintiff had obtained specific permission, as was required, to use a company vehicle to drive to a nearby lumber yard and purchase lumber for the construction of the workbench. At the end of the workday, the plaintiff, with the aid of several other employees, carried the lumber from the truck into the shop and onto the mezzanine on which the saw was located.

The plaintiff testified that management was aware of his use of the saw due to his earlier use of the company vehicle and his transport of the wood into the shop in plain view. The plaintiff did not, however, obtain explicit permission to use the saw. While the plaintiff was operating the saw it "kicked back" and pulled his left hand into the blade of the saw, severing his fingers and thumb. The saw as manufactured was equipped with a removable anti-kickback device which was not in place at the time the plaintiff was operating the saw. Following the accident, an anti-kickback device was placed on the saw by J & S.

The plaintiff instituted this action in two counts. In the first count of his amended complaint, the plaintiff alleged that Black & Decker was strictly liable for the injuries he suffered in that it designed, manufactured, distributed and sold the saw in a defective condition unreasonably dangerous to the plaintiff. The plaintiff alleged that the saw was defective because the anti-kickback device was easily removable, and because there were inadequate warnings and instructions relating to the use of the anti-kickback device. Black & Decker denied that the saw was defective and raised three special defenses: that the plaintiff improperly operated the saw; that the plaintiff assumed the risk of operating the saw in the condition in which it was maintained; and that the saw had been altered by a third party without the consent of Black & Decker, and that such alteration could not have been reasonably anticipated by Black & Decker. The plaintiff alleged in the second count of his amended complaint that J & S was negligent in removing the anti-kickback device and in failing to install additional safety devices,[1] in failing to provide any safety warnings or instructions, save one warning on the saw itself, on the safe operation of the saw, and in failing to maintain the saw in a safe condition. J & S denied being negligent and, by way of a special defense, alleged that the plaintiff's injuries were the result of his negligent operation of the saw.

The jury found, in response to interrogatories, that the saw was not defective in either of the ways alleged by the plaintiff in the first count of his complaint, and, accordingly, returned a verdict for Black & Decker. The jury returned a verdict in favor of the plaintiff against J & S on the second count of the complaint, and awarded the plaintiff damages in the amount of

---

[1] The allegation of negligence for failure to install other safety devices was withdrawn by the plaintiff during the trial.

$630,000. The jury found, however, that the plaintiff was 30 percent contributorily negligent and, accordingly, reduced the damage award to $441,000. The trial court denied J & S's motion to set aside the verdict and to render judgment in accordance with its earlier motion for a directed verdict. The court also denied the plaintiff's motion to set aside the verdict in favor of Black & Decker.

In its appeal from the judgment rendered for the plaintiff, J & S claims that the trial court erred (1) in its charge to the jury regarding the duty owed the plaintiff by J & S, (2) in failing to instruct the jury as requested regarding the open and obvious nature of the condition of the saw, and (3) in refusing to set aside the verdict and direct judgment for J & S on the basis that there was insufficient evidence on the issue of liability. The plaintiff, in his appeal from the judgment for Black & Decker, claims that the trial court erred in prohibiting the plaintiff's cross-examination of Black & Decker's expert witness as to whether his opinion on the efficacy of placing warnings directly on the saw was the same during an earlier time period as that expressed at the time of trial, and in prohibiting the introduction of evidence regarding safety measures taken subsequent to the manufacture of the saw in question by manufacturers other than Black & Decker. Black & Decker has presented three alternate grounds upon which the judgment in its favor should be affirmed.

I

## Appeal of J & S Hydraulics

J & S first claims that the trial court erred in instructing the jury that J & S owed the plaintiff a duty of reasonable care.[2] J & S argues that the permissive use of

---

[2] The trial court instructed the jury as follows: "What is negligence. The definition of negligence is to be applied to the alleged negligence contained

the radial arm saw by the plaintiff constituted a gratuitous bailment, and cites *Johnson* v. *Bullard Co.,* 95 Conn. 251, 111 A. 70 (1920), for the proposition that a gratuitous bailor is only liable for injuries occurring as a result of defects in the bailed property of which it was actually aware and which it either deliberately or by gross negligence did not disclose to the bailee. The plaintiff argues, however, that the use of the saw constituted a mutual benefit bailment requiring a duty of reasonable care by the bailor and, therefore, that the trial court's instructions were not erroneous. The plaintiff argues in the alternative that if a gratuitous bailment relationship were created, the gross negligence standard articulated in *Johnson* v. *Bullard Co.,* supra, is outdated and that the trend of modern authority is to require a duty of reasonable care on the part of a gratuitous bailor.

"A bailment is a consensual relation and it includes, in its broadest sense, any delivery of personal property in trust for a lawful purpose." *Pinto* v. *Bridgeport Mack Trucks, Inc.,* 38 Conn. Sup. 639, 641, 458 A.2d 696 (1983). "The essential element of bailment is the express or implied assumption of control over the property by the bailee." *Lissie* v. *Southern New England Telephone Co.,* 33 Conn. Sup. 540, 543, 359 A.2d 187 (1976); see also *Malone* v. *Santora,* 135 Conn. 286, 289, 64 A.2d 51 (1949); *On Site Energy Corporation* v. *Sperry Rand Corporation,* 5 Conn. App. 326, 331, 498 A.2d 121, cert. deied, 197 Conn. 818, 501 A.2d 388 (1985); *Desmond* v. *Wall,* 39 Conn. Sup. 503, 504, 466 A.2d 804 (1983). In *Zeterstrom* v. *Thomas,* 92 Conn. 702, 704, 104 A. 237 (1918), the court defined a bail-

in the plaintiff's [amended] count two . . . . Negligence is the doing of something which a reasonably prudent man would not do under the circumstances, or omitting to do what a reasonably prudent man would do under the circumstances. It is a breach of a legal duty owed by one person to another and such legal duty is the exercise of reasonable care."

ment as "a delivery of goods in trust upon a contract, express or implied, that the trust shall be duly executed, and the goods restored by the bailee, as soon as the purpose of the bailment shall be answered."

"The duties and liabilities of bailor and bailee are generally determined according to the character of the bailment as one for mutual benefit, or gratuitous . . . . " D. Wright & J. Fitzgerald, Connecticut Law of Torts (2d Ed.) § 84, p. 181. Accordingly, bailments are now generally classified as (1) those for the sole benefit of the bailor, (2) those for the sole benefit of the bailee, and (3) those for the mutual benefit of both parties.[3] Id.

A bailment for mutual benefit arises whenever it appears that both of the parties receive a benefit from the transaction. 8 Am. Jur. 2d, Bailments § 26. Classification of a bailment as one for mutual benefit, however, does not require that actual money or other consideration pass between the parties, nor does it require the demonstration of a specific, tangible benefit or compensation. Id.; *American Enka Co.* v. *Wicaco Mach. Corporation,* 686 F.2d 1050, 1053 (3d Cir. 1972). A mutual benefit bailment may be premised on the expectation of benefits expected to accrue as a result of the bailment. *Roy* v. *Friedman Equipment Co.,* 147 Conn. 121, 122–23, 157 A.2d 599 (1960); *Global Tank Trailer Sales* v. *Textilana-Nease, Inc.,* 496 P.2d 1292, 1294–95 (Kan. 1972). Thus, where the bailment or loan of an article is motivated by the bailor's desire to promote a sale of the article to the bailee, a mutual benefit bailment is created although no money or compensation has passed. *Roy* v. *Friedman Equipment Co.,* supra, 123; *Tierstein* v. *Licht,* 174 Cal. App. 2d 835, 842, 345 P.2d 341 (1959). Similarly, if the custody

---

[3] Gratuitous bailments include both bailments for the sole benefit of the bailor and those for the sole benefit of the bailee. 8 Am. Jur. 2d, Bailments § 18.

or use of a bailed article is incidental to some other business transaction between the parties, it may result in a bailment for a mutual benefit, even though the loan is gratuitious. *Nelson* v. *Fruehauf Trailer Co.*, 20 N.J. Super. 198, 202, 89 A.2d 445 (1952), aff'd, 11 N.J. 413, 94 A.2d 655 (1953); *Berlow* v. *Sheraton Dallas Corporation*, 629 S.W.2d 818, 821 (Tex. App. 1982); *Wilson* v. *Hooser*, 573 S.W.2d 601, 602–603 (Tex. Ct. App. 1978).

The loan of the saw by J & S for use by the plaintiff after regular working hours inured to the benefit of J & S. The permissive use of the machinery, a fringe benefit of employment, was surely calculated by management to promote goodwill and productivity among the employees of J & S. The plaintiff's use of the saw benefited both parties although no actual money or other tangible consideration was exchanged. A mutual benefit bailment may be created when, as here, a permissive loan results in benefits to both bailor and bailee, although no actual consideration is exchanged. See *Dufur* v. *Lanvin*, 101 App. Div. 2d 319, 324, 476 N.Y.S.2d 389 (1984); *Ellis* v. *Moore*, 401 S.W.2d 789, 794 (Tex. 1966). We conclude, therefore, that the loan of the saw by J & S for use by the plaintiff constituted a mutual benefit bailment.[4]

A bailor in a mutual benefit bailment is under a duty to use reasonable care to ensure that the bailed property is reasonably safe for use in the manner and for

---

[4] Our conclusion that a mutual benefit bailment is present in this case renders unnecessary a determination of the standard of care required of a gratuitious bailor in a bailment for the sole benefit of the bailee. We note, however, that the minimal standard of care required of a bailor in such a situation under *Johnson* v. *Bullard Co.*, 95 Conn. 251, 111 A.2d 70 (1920), is in contrast with the duty of reasonable care imposed on a bailee in a bailment for the sole benefit of the bailor. *National Broadcasting Co.* v. *Rose*, 153 Conn. 219, 224, 215 A.2d 123 (1965); *Welch* v. *Boston & Albany R.R. Co.*, 41 Conn. 333, 343 (1874). The resolution of the different standard for each, however, must await another case.

the purpose reasonably to be anticipated by the bailor. *Roy* v. *Friedman Equipment Co.*, supra, 123; *Phenning* v. *Silansky,* 144 Conn. 223, 226, 129 A.2d 224 (1957); *Minicozzi* v. *Atlantic Refining Co.,* 143 Conn. 226, 231, 120 A.2d 924 (1956). Accordingly, the trial court did not err in instructing the jury that J & S owed the plaintiff a reasonable standard of care.

J & S next claims error in the trial court's failure to instruct the jury as requested regarding the open and obvious nature of the condition of the saw.[5] The gist of the jury instruction proposed by J & S is that were the jury to find that the allegedly defective nature of the saw was open and obvious to the plaintiff, no liability could be imposed on J & S. This instruction was based, however, on the erroneous assumption of J & S that a gratuitous bailment was present and that the principles articulated in *Johnson* v. *Bullard Co.,* supra, were controlling in this case.

We recognize that in a bailment for the sole benefit of the bailee, the bailor has no duty to warn the bailee of defects in the bailed property which are open and obvious. Id., 258. Our conclusion, however, that a mutual benefit bailment was created required of J & S a duty of reasonable care and, as we have observed, the trial court properly instructed the jury in this regard. Thus, even if the allegedly defective nature of

[5] J & S requested that the trial court instruct the jury as follows: "I must instruct you that, even if you find actual knowledge of the specific defect on the part of the defendant J & S Hydraulics, before you can find any responsibility on its part, you must also be convinced by the plaintiff, again by a fair preponderance of the evidence, that the defect was, in fact, hidden. By hidden, I mean not open or obvious to Mr. Hartmann. In other words, if you find that Mr. Hartmann knew or reasonably should have known that the anti-kickback device was either not in the proper position or not on the saw during the time he used it, then again, you cannot find any responsibility on the part of J & S Hydraulics, and again, you must stop there, go no further, and return a verdict in favor of J & S Hydraulics and against the plaintiff."

the saw was found by the jury to be open and obvious to the plaintiff, the jury nevertheless may have concluded that J & S breached its duty of reasonable care. The plaintiff had alleged in his complaint not only that J & S was negligent in failing to warn the plaintiff regarding the condition of the saw, but also alleged that J & S was negligent in removing the anti-kickback device and in failing to maintain the saw in a safe condition. Therefore, even had the jury concluded that the allegedly defective nature of the saw was open and obvious to the plaintiff, a finding of negligence was still possible predicated on the plaintiff's other allegations of negligence.

The allegation that the saw was patently defective implicated any contributory negligence of the plaintiff, which the jury ultimately concluded to be 30 percent. It did not, however, entirely insulate J & S from liability, which was the essence of the requested instruction. Thus, the instruction proposed by J & S, namely, that if the allegedly defective nature of the saw was found to be open and obvious to the plaintiff liability could not be imposed on J & S, was an incorrect statement of the law in this case, and the trial court did not err in refusing so to instruct the jury.

J & S finally claims error in the trial court's refusal to set aside the verdict and direct judgment for J & S on the ground that there was insufficient evidence on the issue of liability. A trial court's refusal to set aside a verdict is entitled to great weight and every reasonable presumption must be given in favor of its correctness. *O'Leary* v. *Industrial Park Corporation*, 14 Conn. App. 425, 430, 542 A.2d 333 (1988). The refusal to set aside a verdict will not be disturbed unless it appears that the trial court clearly abused its discretion. If the jury could reasonably and logically have reached the conclusion it did, the court's refusal to set aside the verdict will be sustained. *Jonap* v. *Silver,* 1

Conn. App. 550, 559, 474 A.2d 800 (1984). In conducting our review, the evidence will be given the construction most favorable in support of the verdict. *Carrier v. Rodrigue,* 3 Conn. App. 401, 402, 488 A.2d 846 (1985).

Our review of the record indicates that there was ample evidence upon which the jury could have concluded that J & S gave permission to the plaintiff to use the saw, that J & S was aware of such use and that J & S knew or should have known that the anti-kickback device was not in place and failed to warn the plaintiff of the condition of the saw. Furthermore, there was undisputed testimony that the anti-kickback device had not been in place for many years and that the plaintiff had only used the saw infrequently. These factors, along with the absence of any relevant warnings, constituted sufficient evidence upon which the jury could have concluded that J & S had reason to believe that the plaintiff would not realize the danger of operating the saw without the anti-kickback device. The trial court, therefore, did not err in denying the motion to set aside the verdict and refusing to render judgment for J & S in accordance with its motion for a directed verdict.

## II

### APPEAL OF STANLEY HARTMANN

During the course of the trial, both the plaintiff and Black & Decker presented expert testimony concerning the plaintiff's allegation that the radial arm saw as manufactured by Black & Decker was defective in that the saw's anti-kickback device could easily be removed and that there were inadequate warnings and instructions relating to the use of that device.

On cross-examination, Black & Decker's expert witness, Craig Bertolett, was asked whether at the time

of manufacture of the saw it was "feasible and practical" to place warnings concerning the anti-kickback device directly on the saw.[6] Bertolett responded that although placing such warnings directly on the saw was possible, such warnings would not be practical because they would be ineffective.[7] The plaintiff's counsel then queried whether Bertolett held the same opinion during the time period that he was employed by Emerson Electric, another manufacturer of radial arm saws. The defendant objected to this question, and an extended colloquy ensued between counsel and the trial court, during which the jury was excused. The plaintiff argued that he was attempting to offer evidence that from 1976 to 1980, while Bertolett was employed at Emerson Electric supervising the manufacture of radial arm saws, warnings concerning the anti-kickback device were placed directly on the saws. The plaintiff argued that this information was admissible to impeach Bertolett's testimony that such warnings were impractical and ineffective, and further argued that the testimony was "independently" admissible as evidence of safety measures adopted subsequent to the manufacture of the saw. Black & Decker argued that any evidence of safety measures taken regarding radial arm saws subsequent to the manufacture in 1966 of the saw at issue in this case was both irrelevant and prejudicial. The court sustained Black & Decker's objection, and limited the plaintiff's cross-examination to conditions prevailing during the period of time of the manufacture of the saw

---

[6] The warning that was affixed to the saw, as conceded by the plaintiff in his complaint, did not relate to the use of the anti-kickback device.

[7] Bertolett's testimony that placing warnings directly on the saw was "possible" was tantamount to an admission that placement of such warnings was "feasible." We are led to this conclusion by the definition of "feasible" as "possible of realization"; Webster, Third New International Dictionary; and counsel for Black & Decker's unequivocal assertion to the court that "we have conceded that it is feasible. There is no issue about that . . . we concede and [Bertolett] so testified it is feasible to put them on there."

at issue in this case.[8] The plaintiff excepted to the court's ruling.

The plaintiff claims on appeal that the trial court erred in limiting the plaintiff's cross-examination of Black & Decker's expert witness, and in prohibiting the plaintiff from asking that witness his opinion while he was employed by Emerson Electric as to the efficacy of placing warnings directly on the saw. The plaintiff claims that such evidence was admissible for impeachment purposes as a prior inconsistent statement of Bertolett and was also admissible as evidence of safety measures taken subsequent to the manufacture of the product.[9]

When recovery is sought, as in this case, under a theory of strict products liability, evidence of remedial measures taken by the manufacturer of the product following the injury suffered, if shown to be related to the claimed defects, may be admitted at trial. *Sanderson* v. *Steve Snyder Enterprises, Inc.,* 196 Conn. 134, 147–48, 491 A.2d 389 (1985). In *Ames* v. *Sears, Roebuck & Co.,* 8 Conn. App. 642, 647, 514 A.2d 352, cert. denied, 201 Conn. 809, 515 A.2d 378 (1986), we held that in a products liability action evidence of safety features provided by other manufacturers of the prod-

---

[8] The court did not specifically state the basis for its ruling.

[9] We reject Black & Decker's argument that we should decline to review this claim of error due to the plaintiff's failure to make a formal offer of proof regarding the testimony which was sought to be introduced. An offer of proof may be a necessary predicate to appellate review when the nature of the evidence to be introduced is not disclosed in the record, and the reviewing court is therefore unable to determine the propriety or effect of the excluded matter. *State* v. *Conrod,* 198 Conn. 592, 597, 504 A.2d 494 (1986); *State* v. *Gooch,* 186 Conn. 17, 24, 438 A.2d 867 (1982); C. Tait & J. LaPlante, Connecticut Evidence (2d Ed.) § 3.5.5. In this case, however, the plaintiff stated at length on the record the content of the expected testimony, the purpose for which such testimony was solicited, and the grounds for its admissibility. The substance of the proffered evidence is therefore amply disclosed in the record, and the plaintiff has clearly met his burden of providing an adequate appellate record to support his claim of error.

uct in question prior or contemporaneous to the manufacture of that product was relevant and admissible as to the issue of defectiveness. The excluded evidence in this case falls somewhere between the evidence deemed admissible in *Sanderson* and in *Ames:* Whether safety measures taken by other manufacturers subsequent to the manufacture of the product in question but prior to the date of injury are admissible as to the issue of defectiveness. We hold that such evidence may be admitted in a products liability action, if relevant to the claimed defect and not remote in time or connection to the defect.

The rationale of the court in *Sanderson* allowing the admission of evidence of subsequent safety measures, and adopted in *Ames,* is as follows: " 'Subsequent change evidence may be highly probative of defectiveness because it provides a safer alternative against which to compare the allegedly defective product. Because the manufacturer's culpability is not an issue, there should be no concern that the subsequent changes will be construed as an admission of negligence.[10] Therefore, evidence of subsequent changes may be relevant without being prejudicial in strict products liability actions.' " *Sanderson* v. *Steve Snyder Enterprises, Inc.,* supra, 147–48, quoting note, "Subsequently Remedying Strict Products Liability: *Cann* v. *Ford,* " 14 Conn. L. Rev. 759, 769 (1982); *Ames* v. *Sears, Roebuck & Co.,* supra. We find this rationale to be equally applicable to postmanufacture remedial measures taken by other manufacturers of the product in question.

The central issue in a products liability action is whether the product in question is defective. Evidence of safety measures taken by other manufacturers sub-

---

[10] In addition, such an admission cannot rationally be inferred when the evidence is offered against a party—Black & Decker—which did not make the changes.

sequent to the manufacture of the product in question may be highly probative on the issue of defectiveness because it provides safer alternatives against which to compare the allegedly defective product. See *Sanderson* v. *Steve Snyder Enterprises, Inc.*, supra, 147. Furthermore, postmanufacture remedial measures taken by other manufacturers may be highly probative on the issue of the feasibility of alternative designs.[11] See *Schenck* v. *Pelkey,* 176 Conn. 245, 250, 405 A.2d 665 (1978); *Sutkowski* v. *Universal Marion Corporation,* 5 Ill. App. 3d 313, 319, 281 N.E.2d 749 (1972); *Caterpillar Tractor Co.* v. *Beck,* 624 P.2d 790, 793 (Alaska 1981). Thus, evidence of remedial measures taken by other manufacturers after the manufacture of the product at issue may be relevant and admissible on both the issues of defectiveness and feasibility of alternative design.

On appeal, however, a trial court's ruling as to the admissibility of evidence is accorded great deference; *State* v. *Boucino,* 199 Conn. 207, 225, 506 A.2d 125 (1986); and we will only reverse such a ruling upon a showing of a clear abuse of discretion. *Farrell* v. *St. Vincent's Hospital,* 203 Conn. 554, 556, 525 A.2d 954 (1987). Furthermore, relevant evidence may be properly excluded by the trial court if its probative value is outweighed by such factors as time, confusion, or prejudice. *State* v. *DeMatteo,* 186 Conn. 696, 702–703, 443 A.2d 915 (1982); C. Tait & J. LaPlante, Connecticut Evidence (2d Ed.) § 8.1.3, p. 227. These well established principles vesting a trial court with broad

---

[11] The circumstances in this case must be distinguished from the situation in which the state of the art at the time of manufacture did not include the ability to equip the product with safety features that were subsequently utilized as the state of the art improved. *Tomer* v. *American Home Products Corporation,* 170 Conn. 681, 687, 368 A.2d 35 (1976). In such a case, subsequent safety measures are clearly inadmissible. Id. In this case, however, Black & Decker did not dispute that the placement of warnings on the saw itself was feasible at the time of manufacture.

discretion in determining the admissibility of evidence are fully applicable to a court's determination of the admissibility of subsequent repair evidence in a products liability action. See *Sanderson* v. *Steve Snyder Enterprises, Inc.*, supra, 148 n.10. We conclude in this case that the trial court did not abuse its discretion in excluding the proffered testimony.

Bertolett's testimony that it was "possible" at the time of manufacture in 1966 to place warnings directly on the saws established the feasibility of placing such warnings. The jury was, therefore, aware that such warnings were feasible, and any evidence of a practice at Emerson Electric from 1976 to 1980 for the purpose of demonstrating feasibility was cumulative. Furthermore, the proffered evidence regarding procedures at Emerson Electric ten to fourteen years after the manufacture of the saw in question was remote in time as to the issue of the defectiveness of the saw as manufactured in 1966 by Black & Decker. Such evidence, moreover, was not critical to the plaintiff's demonstration of defectiveness. The plaintiff presented ample expert testimony on the issue of defectiveness, which testimony was emphasized by the trial court in its charge to the jury. In light of the concession of feasibility by Black & Decker, the remoteness in time of the proffered evidence and the ample evidence presented by the plaintiff on the issue of defectiveness, the trial court could have in its discretion concluded that any prejudice and confusion stemming from the proffered testimony outweighed its probative value. " 'The introduction of evidence about subsequent changes in the product or its design threatens to confuse the jury by diverting its attention from whether the product was defective at the relevant time to what was done later.' " *Sanderson* v. *Steve Snyder Enterprises, Inc.*, supra, 145 n.8, quoting *Grenada Steel.Industries* v. *Alabama Oxygen Co.*, 695 F.2d 883, 888 (5th Cir. 1983). Under these

circumstances, the trial court did not abuse its discretion in excluding from evidence safety measures taken by Emerson Electric ten to fourteen years following the manufacture of the saw in question. *Schenck* v. *Pelkey,* supra (admissibility of safety measure taken by other manufacturers subsequent to manufacture of product in question to demonstrate feasibility within discretion of trial court); *Lolie* v. *Ohio Brass Co.,* 502 F.2d 741, 744–45 (7th Cir. 1974).

The plaintiff also claims that the proffered evidence regarding the placement of anti-kickback warnings directly on radial arm saws by Emerson Electric while Bertolett was employed by Emerson as a supervisor of the manufacture of such saws was properly admissible as a prior inconsistent statement to impeach Bertolett's testimony that such warnings were impractical and ineffective. "If a witness, such as an expert, testifies in terms of opinion, of course all courts will permit impeachment by showing a previous expression by the witness of an inconsistent opinion." C. McCormick, Evidence (3d Ed.) § 35. Although such prior inconsistent statements are typically oral or written; *Raffile* v. *Stamford Housewrecking, Inc.,* 168 Conn. 299, 302, 362 A.2d 879 (1975); *Schurgast* v. *Schumann,* 156 Conn. 471, 482, 242 A.2d 695 (1968); inconsistent positions may also be shown by conduct as well as by statements. C. Tait & J. LaPlante, Connecticut Evidence (2d Ed.) § 7.24.3; see also *Weller* v. *Fish Transport Co.,* 123 Conn. 49, 56–57, 192 A.2d 317 (1937).

"In order for a statement to be introduced as a prior inconsistent statement, the court must be persuaded that, taking the testimony of the witness as a whole, the statements are indeed inconsistent, the inconsistency is substantial and relates to a material matter, and the statement yields more than a possible inference of inconsistency." *Patrick* v. *Burns,* 5 Conn. App. 663, 675–76, 502 A.2d 432 (1985); *State* v. *Piskor-*

*ski,* 177 Conn. 677, 710, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979). We cannot conclude that the practice by Emerson Electric, at the time Bertolett was employed by that company as a supervisor of the manufacture of radial arm saws, of affixing anti-kickback warnings directly on the saws, is indeed inconsistent with Bertolett's testimony at trial that such warnings are impractical and ineffective. The record is devoid of evidence that the use of such warnings by Emerson Electric during Bertolett's tenure indicates that he favored such a practice or deemed those warnings to be an effective safety measure. Indeed, it is possible that such warnings were affixed despite Bertolett's vociferous objection that the warnings were ineffective. The evidence in this regard is entirely insufficient to support the threshold requirement that Bertolett's testimony at trial and his conduct while in the employ at Emerson are indeed inconsistent. In the absence of a clear demonstration of inconsistency, the plaintiff's claim of error must fail.

Since we conclude that the trial court did not err in either of the ways claimed by the plaintiff, we need not discuss the three alternate grounds presented by Black & Decker for affirmance of the judgment in its favor.

There is no error on either appeal.

In this opinion the other judges concurred.