[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an case brought by the plaintiff, Progressive Northwest Insurance Company, as subrogee (Plaintiff), of its insured Jean Hill (Hill) against the remaining defendants, Portland Boat Works, Inc. (Portland) and Gary Pawlowski (Pawlowski), and tried to the court.
The plaintiff alleges that it has suffered a loss of $24,000 by virtue of its payment of an insurance claim in that amount to Hill as a result of the casualty loss of her insured boat. Progressive further claims that such loss was directly and proximately caused by the negligence, carelessness or heedlessness of the defendants Portland and Pawlowski.
Specifically, the plaintiff claims that Portland negligently, carelessly and heedlessly breached its duty as a bailee of a boat or alternatively, as a licensor of a boat slip, in that it should have known CT Page 2130 by the continuous sound of an operating bilge pump, that Hill's boat was taking on water and that the owner or the lessee should have been notified. The plaintiff further contends that Portland failed to adequately oversee or supervise the marina where the boat was docked to insure that the boat was reasonably safe from sinking. The plaintiff also asserts in its complaint that the defendant Gary Pawlowski breached his duty, based upon some unspecified status, in that he negligently, carelessly and heedlessly failed to inspect the boat, remove the boat from the water when he knew or reasonably should have known it was in danger of sinking, used the boat without exercising proper care to inspect the boat and insure its sea-worthiness, and periodically inspect the boat for signs of leakage.
Hill withdrew her complaint against the defendants and Progressive withdrew its claims against the first-named defendant Paul Pizzo (Pizzo).
The court finds the following facts. At all times relevant to this case, Hill was the owner of a 26-foot Celebrity motorboat. She entrusted the boat to Pizzo. Pizzo asked his friend Pawlowski to rent a boat slip on his behalf for Hill's boat at Portland, a marina located on the Connecticut River in Portland, Connecticut.
On July 30, 1996, Pawlowski went to the marina as Pizzo requested and rented a boat slip from Portland. Pawlowski paid the $150.00 fee for the remainder of the boating season on behalf of Pizzo and expected to be reimbursed by Pizzo. He conducted the slip rental transaction directly with the owner of the marina, Jarvis Barton (Barton). In consideration for the fee Barton assigned Pizzo the last available slip, which was 40 feet long.[1]
The only evidence of the slip rental transaction was a handwritten receipt which Barton gave to Pawlowski and on which was written the name "Pizzo" and Pawlowski's telephone number.
Portland typically issued a contract with terms and conditions to it's season-long customers, but since the season was almost over and the rental was transitory, Barton did not enter into a written contract or otherwise impose any terms or conditions on the rental or undertake to perform any services in connection with the rental. The agreement was simply a lease of the boat slip which could be and was accessed by Pizzo at will without any assistance from Portland.
Under the terms of his agreement with regular seasonal customers, Portland did not undertake a duty to inspect, maintain or repair boats. CT Page 2131 However, it was the business practice of Portland to take nominal corrective action if its staff happened to observe a problem, such as tightening loose tether ropes. It was also Portland's business practice to call a boat owner if its staff observed a problem which warranted the owner's attention and to make repairs at the owner's request. Portland did not repair boats on its own initiative or expense.
On an unspecified date after Pawlowski rented the slip for him, Pizzo motored the boat to and tied it into the boat slip which Pawlowski rented for him at Portland. After he secured the boat in the slip, Pizzo took the keys and left. Portland did not require or request that a key be left at the marina and Pizzo did not do so. Pizzo had the only key to the boat, which key was required to start the engine and operate the boat.
On one occasion, Pizzo invited Pawlowski and two females to go out on the boat. Pizzo motored the boat from and returned it to the boat slip at Portland without the assistance of, or any impediment from Portland or Pawlowski. This was the only time Pawlowski saw the boat. Pawlowski was an experienced boat owner. He testified that on the one occasion he saw the boat, the boat operated properly and he did not notice any sign of a malfunction or a defect.
Pawlowski owned a used car business. Pawlowski's practice was to pay a commission to anyone who brokered the sale of a car for him. Pawlowski knew that Pizzo planned to sell Hill's boat and expected that if he found a buyer for the boat Pizzo would pay him a commission. There was no brokerage agreement between Pizzo and Pawlowski made no attempt to broker the sale of Hill's boat.
At some point Barton observed unidentified persons taking a battery charger to the boat, but he did not see whether the charger was used. The boat was equipped with a battery operated bilge pump which discharges natural accumulations of water from the boat to keep it from sinking. Although there was a repair shop at Portland, neither Pizzo nor anyone else asked Portland to inspect, maintain or repair the boat on that or any other occasion. In fact there is no evidence that Pizzo or anyone else involved with the boat, other that Pawlowski, ever spoke to Barton or the staff of Portland.
The marina's offices were closed during the first two weeks of August, consistent with Portland's annual business practice. During the business hours, there was a skeleton crew consisting of one mechanic working between Portland and another marina owned by Barton.
On Sunday, August 13, 1996, Mr. Thomas Engel (Engel), an acquaintance CT Page 2132 of Barton, happened to be at Portland and noticed that Hill's boat was nearly full of water. Before he could rescue the boat, it sank. With the assistance of another volunteer, Engel dragged the boat to the towing area and towed the boat out of the water and onto the boatyard. Portions of the boat may have been dragged along the bottom of the river unavoidably while the boat was being rescued.
Subsequent inspection of the boat revealed that a shift cable boot, located in a recessed area at the rear of the boat, was displaced, leaving an opening through which water could have seeped into the boat, causing it to sink. The plaintiff failed to present any evidence to establish that the boot was dislodged while being rescued and the recessed position of the boot militates against that inference.
 I
The plaintiff predicates its claim that Portland failed to exercise due care on an assertion that Portland was a bailee of the boat. In support of that proposition, the plaintiff cites Johnson v. Santora,15 Conn. Sup. 374 (1947). In that case our Supreme Court articulated the clear distinction between those cases in which a bailment is created and those in which one is not created. It distinguished those situations in which the defendant merely collected a fee and designated the area in which the plaintiff parked a vehicle from those in which the plaintiff gave the car to the defendant and the defendant parked the car and retains the key, giving the plaintiff a ticket which had to be presented before the car will be returned to the plaintiff.
The court said that the former situation, in which the defendant merely collects a fee and assigns a space, lacked "the essential element of possession, " necessary to create a bailment and therefore created a license rather than a bailment. Malone v. Santora, 135 Conn. 286,64 A.2d 51 (1949) affirming and Johnson v. Santora, supra at15 Conn. Sup. 374.
In Malone, supra. the court held that a bailment was created where the owner of car purchases a parking ticket, drove her car to the entrance of a parking lot and relinquished the car and the keys to the attendant. The owner in that case could not retrieve the car and had to rely on the defendant to return the car. The car did not have an assigned parking place. The court concluded that the owner of the car relinquished dominion and control over the vehicle to the defendant.
The legal principals established in Johnson, supra., and affirmed inMalone, supra., continue to be followed. The lack of a reserved space for CT Page 2133 the lessee's property to be stored and the lessor's inability to move the property was held not to be a sufficient relinquishment of control to create a bailment in Foodways National Inc. v. Crystal, 232 Conn. 325,654 A.2d 1228 (1995). See also Hartman v. Black Decker Mfg. Co.,16 Conn. App. 1, 4, 547 A.2d 38, 6 (1988) (A bailment is created when personal property is delivered to another in trust. In order for a bailment to be created there must be a relinquishment by the bailor of the bailed property and an assumption by the bailee of control over the bailed property); Vece v. Vanacore, 2 Conn. Cir. ct. 325, 328 198 A.2d 728 (1963) (A bailment requires a surrender of possession and custody of personal property); B.A. Ballou and Co., Inc. v. Citytrust, 218 Conn. 749,753, 591 A.2d 126 (1991), (A bailor must control the bailed property. Those standards apply in other jurisdictions as well. 8 Am.Jur.2d 616, Bailment § 169 (1997)
There is one Connecticut case involving a moored boat in which the court applied those principals and wrote:
 It is clear that the boat owner retained complete control over the vessel at all times. It is true that the contract provides that in an emergency situation the marina is permitted to move the unattended boat of the lessee to a safer location, but there is no allegation that this was indeed the situation. The boat owner would get to his vessel as it was tied to its mooring offshore, and would sail away and then return to the mooring and secure the vessel. The missing element of bailment is the fact that the boat owner at no time delivered up the property, that is the boat, to the defendant. This is not unlike the situation where one rents a parking space and retains the keys to one's car and further retains the right to enter and leave the parking space at such times as the vehicle owner wishes, without any interference or control by the property owner.
Amica Mutual Ins. Co. v. Spicer's Marina, Inc., Superior Court, judicial district of Hartford, Docket No. 510330 (August 4, 1993, Koletsky, J.)
The facts of this case are similar to those on Amica Mutual, supra., and distinguishable from those in Malone, and Johnson, supra., and their progeny. As in Amica Mutual, supra., Pizzo motored the boat into the slip himself. He never relinquished the boat to Portland. The boat had an assigned space. Pizzo did not give Portland a key to the boat, nor was not required to present a ticket in order to retrieve the boat from CT Page 2134 Portland, took the boat out of the marina and returned it to its assigned slip independently. In short, Pizzo did not relinquish control over the boat to Portland and therefore Portland was not a bailee of the boat.
The plaintiff asserts that if Portland is not a bailer, it is a licensor. In Rokosa v. Hartford Jai Alai, Inc., 37 Conn. Sup. 620430 A.2d 1318 (1980), based upon facts similar to those in this case, the court found that a license rather than a bailment existed. In both cases, the plaintiff deposited his property in a particular space, locked it and retained the key. See also Hennessey v. Hennessey, 145 Conn. 211140 A.2d 473 (1958).
While Portland may have been a licensor, it did not fail to perform the duties of a licensor. In order to establish that a licensor breached its duty, the licensee must establish three essential elements by a preponderance of the evidence. The first element is that the licensor knew of the presence of the licensee on its premise. There is no dispute that Portland knew the boat was docked in its slip.
The second element is that the licensee failed to exercise reasonable care in one of two ways. The first is by actively subjecting the plaintiff's property to danger. The defendant alleges that the defendant was negligent by omission in that it failed to inspect the boat. There is no claim that Portland subjecting the plaintiff's property to danger, actively or otherwise.
The second way in which a licensor can breach its duty of care is by failing to warn a licensee of a dangerous condition on his premises of which the defendant itself knew and could reasonably assume the plaintiff would not know. Dougherty v. Graham, 161 Conn. 248, 251, 287 A.2d 382
(1971). Twistein v. Hill, 218 Conn. 610, 624 (1991); Morin v. Bell CourtCondominium Assn., Inc., 223 Conn. 323, 327, 612 A.2d 1197 (1992). A licensor owes no duty to a licensee to keep his premises reasonably safe because the licensee takes the premises as he finds them. Id.
There was no allegation that there was a dangerous condition at the marina, nor was there any evidence presented to support an allegation that Portland failed to warn the plaintiff's subrogor of a dangerous condition at the marina. On the contrary, the plaintiff claims instead that Portland failed to discover and warn and mitigate the effects of a malfunction of the boat itself. The plaintiff has cited no authority to support its proposition that a licensor had a duty to inspect for, detect, warn of or mitigate a risk posed by personal property which a licensee brings onto the property of a licensor. CT Page 2135
Even if such a dangerous condition existed, based upon the facts in this case, Portland would not have had a duty to warn the plaintiff because the knew or should have known that the battery was broken.
Judgment is entered for the defendant Portland Boat Works as Portland did not breach any contractual obligation to the plaintiffs, was not a bailee of the boat and did not breach a common law duty of care as a licensor. Neither Portland act nor omission was the proximate cause of the plaintiff's loss.
 II
The plaintiff claims that the defendant Pawlowski was negligent in failing to conform his actions to those which a reasonable prudent man would have taken under the circumstances, but fails to state the legal principal upon which any duty is based.
The plaintiff asserts that "[t]he claim against the defendant Gary Pawlowski is that of simple negligence" for breach of his duty of care by failing to inspect the components of the boat, remove it from the water when he knew of should have known it was in danger of sinking, and to take proper care to inspect and maintain the boat and inspect the boat for leaks and make appropriate repairs.
The existence of a duty of care is an essential element of negligence.Frankovitch v. Burton, 185 Conn. 14, 20, 440 A.2d 254 (1981). A duty to use care may arise from a contract, from a statute, or under common law from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act. Coburnv. Lenox Homes, Inc., 173 Conn. 567, 575-6, 378 A.2d 594 (1977); Neal v.Shiels, Inc., 166 Conn. 3, 12-13, 347 A.2d 102 (1974); ConnecticutSavings Bank v. First National Bank Trust Co., 138 Conn. 298, 303-4,84 A.2d 267 (1951); Orlo v. Connecticut Co., 128 Conn. 231, 237,21 A.2d 402 (1941). See generally Wright Fitzgerald, 33.
The plaintiff has not cited any statute or contract which imposes a duty of care on Mr. Pawlowski, and therefore the court considered the issue of whether Pawlowski owed Hill a common law duty of care. The law of the state of Connecticut imposes different duties of care on landowners, depending upon the status of the injured party as either invitee, licensee or trespasser, in descending order to the duty of care owed. Morin v. Bell Court Condominium Assn., supra, 223 Conn. 323.
The plaintiff alleges that this duty arose when Mr. Pawlowski rented CT Page 2136 the slip for the boat. Those who are invited to enter or remain on land for a purpose directly or indirectly connected with the possessor of the land are characterized as business invitees. Connecticut Law of Torts Fourth Edition, § 49; Restatement (Second) 2 Torts § 332. Hoadleyv. University of Hartford, 176 Conn. 669, 410 A.2d 470 (1979). A possessor of land owes a social invitee the same duty of care which it owes to a business invitee. Connecticut General Statutes § 52-577a. A possessor of land, including a tenant in exclusive control and possession, owes a duty to invitees to inspect and maintain the premises in a reasonably safe condition. Warren v. Stancliff, 157 Conn. 216,251 A.2d 74 (1968). Rogers v. Atlantic Pacific Tea Co., 148 Conn. 104,107 A.2d 712 (1961). A possessor of land has a duty to warn an invitee of dangers on the land of which the invitee could not reasonably be expected to discover. Warren v. Stancliff, supra, 157 Conn. 216. Pawlowski was not in exclusive control and possession over the boat slip. He rented the slip and returned there only once before the boat sank. Hill's agent maintained exclusive possession of the slip. Although Pawlowski rented the slip for Pizzo, since Pizzo maintained exclusive possession of and control over the slip, Pawlowski did not owe a duty to Pizzo or his principal Hill to inspect and maintain the slip in a reasonably safe condition or warn him or a dangerous condition at the marina.
Even assuming arguendo that Pawlowski may have had a duty to warn of dangers at the marina he only had a duty to warn invitees of dangers of which an invitee could reasonably be expected not to discover. Morin v.Bell Condominium Assn., supra, 223 Conn. 323. There is no allegation that the boat sunk because of the dangerous condition of the marina. The plaintiff does not claim or establish that the marina was defective and that the dangerous condition of the marina caused the boat to sink.
The plaintiff alleged that the defendant failed to warn of a defect in the boat itself.
Even if the court were to expand the duty owed to an invitee to include a duty to warn invitees about the defective condition of property which the invitee bring upon the land, which the court is not doing, the plaintiff would not prevail. Were the court to do so, the plaintiff would still have to prove that the defendant knew or should have known of the circumstances that would foreseeably result in the harm suffered. Johnsonv. Healey, 176 Conn. 97, 103, 405 A.2d 54 (1978), aff'd on other grounds, 183 Conn. 514, 440 A.2d 765 (1981). The plaintiff was unable to present any testimony to establish that Pawlowski was aware of any circumstances which would cause a reasonable person, knowing what Pawlowski knew or should have known, to anticipate that harm of the general nature of that suffered was likely to result from his act or CT Page 2137 failure to warn. Pawlowski's unrefuted testimony was that on the one occasion he saw the boat he did not observe any leak, equipment malfunction or other indication whatsoever that the boar was in disrepair or in jeopardy of sinking.
Moreover the plaintiff has not proved that its loss was the proximate cause of Pawlowski's failure to warn. Paige v. Saint Andrew's RomanCatholic Church Corp., supra, 250 Conn. 14. Although Pawlowski was not aware of a problem, Pizzo was. The evidence shows that Pizza was aware that the battery was not working properly and he had a battery charger on the boat. If the battery was not working and the bilge pump did not discharge water which leaked into the boat, the boat could sink. As stated above, there is no duty to warn an invitee of a dangerous condition which the invitee is or reasonably could be expected to discover.
The plaintiff contends that Pawlowski had a duty, as a gratuitous actor, to inspect the boat before it was placed in the slip, without any legal authority to support the claim. The sole gratuity extended by Pawlowski was the unintended gratuitous provision of the boat slip. Section 52-577a of our General Statutes makes the duty owes to a gratuitous invitee is the same as that for a business invitee. A gratuitous actor is liable only if he knows of the dangerous condition and either makes a situation worse or conceals it. Delorenzo v. NorthAmerican Bank and Trust Co., Superior Court, judicial district of Waterbury, Docket No. 128985 (May 15, 1997, Vertefeuile, J.; Hartmann v.Black Decker Mfg. Co., supra, 16 Conn. App. 1, (gratuitous bailment);Derby v. Connecticut Light Power, 167 Conn. 136, 355 A.2d 244 (1974) (gratuitous licensor — duty to disclose known risks licensor will not Recognize). Coville v. Liberty Mutual Ins. Co., 57 Conn. App. 275,748 A.2d 875 cert. granted in part. 253 Conn. 919, 755 A.2d 213 (2000). Section 324 of the Restatement (Second) of Torts states that "[o]ne who, being under no duty to do so, takes charge of another who is helpless adequately to protect himself is subject to liability to the other for any bodily harm caused to him by [inter alia] (a) the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge. . . ." Id. 139. The evidence clearly and irrefutably establishes that Mr. Pawlowski was not aware of any damage to or defect in the boat or the slip. There is absolutely no evidence to the contrary. The plaintiff has failed to establish that Pawlowski breached any duty owed to the plaintiff. Judgment is entered for the defendant.
Vanessa, L. Bryant, Judge