414 P.2d 992

STATE of Arizona ex rel. the INDUSTRIAL COMMISSION of Arizona, Appellant,

v.

STANDARD OIL COMPANY OF CALIFORNIA, Mesa Distributor, and Robert Ream Evans and Jane Doe Evans, dba Standard Oil Company of California, Mesa Distributor, Appellees.

No. 1 CA–CIV 92.

Court of Appeals of Arizona.

June 3, 1966.

Rehearing Denied July 18, 1966.

**390**

Richard J. Daniels, Former Chief Counsel, by Robert K. Park, Present Chief Counsel, for appellant Industrial Commission of Arizona.

Langerman, Begam & Lewis, by Mark I. Harrison and Samuel Langerman, Phoenix, for appellant State of Arizona.

Snell & Wilmer, by J. J. Bouma, Phoenix, for appellees.

CAMERON, Judge.

This appeal arises out of a wrongful death action commenced by the Industrial Commission of Arizona as the assignee of Reba A. Glendenning, surviving widow of William Harold Glendenning. Glendenning died as a result of injuries sustained in an explosion of a fuel tank owned by the defendant, Robert Ream Evans. The trial court granted defendant's motion for summary judgment and the plaintiff, Industrial Commission of Arizona, brings this appeal.

Viewing the record in the light most favorable to the plaintiff, Arizona Coffee Shops v. Phoenix Downtown Parking Association, 95 Ariz. 98, 387 P.2d 801 (1963), and giving the plaintiff the benefit of all favorable inferences that may be drawn from the evidence, Cummings v. Prater, 95 Ariz. 20, 386 P.2d 27 (1963), the following facts are apparent.

Defendant, Robert Ream Evans, was the Mesa, Arizona, distributor for the Standard Oil Company of California. As a part of his operation, defendant Evans owned numerous fuel storage tanks which he would loan to various customers. The tank in question with the capacity of some 560 gallons, was located on the property of ABC Materials in Tempe, Arizona. The tank was used to store diesel fuel.

Several months prior to 18 June, 1963, this tank had been provided or loaned by the defendant Evans. On 18 June, 1963, the building near which the tank was located was severely damaged by fire. The heat from the fire damaged the tank and after 18 June and prior to 3 July, 1963, the tank manifested an impressive variety of defects some of which were a result of the fire though most were not. The tank was charred, badly rusted, covered with deep pitted spots, and well patched in various parts of the tank. The tank ends bulged, and testimony indicates that it disclosed a split near the top. It was estimated to be from 15 to 20 years old. Regarding the tank, Dr. Merle C. Nutt, metallurgist, stated in his report:

"2. The tank was kept in service entirely too long by an attempt to patch it by welding to keep it from leaking, however, as may be seen in the unretouched photographs in this report, the entire tank was pocked with deep pit corrosion so that it could not possibly have been serviceable under such condition regardless of how many times it was weld-patched nor how well the welding jobs were accomplished."

On 3 July, 1963, there was a telephone conversation between Hal Adams and defendant Evans concerning a delivery of diesel fuel to the tank. There was discussion between the two parties about the leak, and how the tank could be repaired. The testimony of Evans indicated that he told Hal Adams the tank should not be welded unless filled with diesel fuel. There is no evidence that deceased was aware of this conversation. The testimony of Hal Adams indicated that he thought Evans was going to weld the tank. Robert Wil-

liam Lewis, an employee of Evans, delivered fuel to the tank and when the fuel level reached the area of the leak, the fuel let out so fast that it was impossible to completely fill said tank.

At the time the fuel was being pumped into the tank, the deceased, William Glendenning, an employee of Hal Adams, was present, and a discussion was held concerning repair of the leak. Attempt was made with some solder and a ballpeen hammer to hammer in the area of the leak, and after putting more fuel into the tank, and the tank continuing to leak, the truck driver stopped filling the tank and left. The tank then held some 360 gallons of diesel fuel.

Although Glendenning had commented to the effect that he wouldn't "touch the tank with a ten-foot pole", Glendenning did attempt to spot weld the hole in the tank with the result that an explosion occurred and the defendant was killed almost instantly.

Glendenning's widow applied to the Industrial Commission of Arizona for workmen's compensation benefits which were paid and the Industrial Commission of Arizona brings this suit under the statute (23–1023 A.R.S.), as assignee to the rights of the widow of the deceased.

Upon the evidence presented herein, this was a bailment for the mutual benefit of both the defendant and ABC Materials. ABC Materials benefited by having a tank upon its premises for the storage of diesel fuel, and the defendant benefited from being able to make a bulk delivery and increase in the sale of his product to ABC Materials. As such, the defendant was under the duty to use reasonable care to see that the tank was reasonably safe for the use in the manner and for the purposes reasonably to be anticipated by the defendant. Roy v. Friedman Equipment Company, 147 Conn. 121, 157 A.2d 599 (1960). There is nothing in the instant case to indicate that the tank in question though old and pitted could not have been reasonably used for the storage of diesel fuel. That the tank's condition was subsequently altered while in the possession of the ABC Materials is not the responsibility of the defendant, for generally the bailor of a chattel is not liable to the bailee or to a third party for defects arising subsequent to the delivery of the chattel to the bailee. Dickson v. Southern California Edison Company, 136 Cal.App. 2d 85, 288 P.2d 310 (1955). The defendant then, in the instant case, was not an insurer of the tank and had no duty to repair the tank after the damage sustained by said chattel after the fire.

Assuming, arguendo, that there was a duty to repair and maintain the tank in a serviceable condition after the fire, there is nothing to indicate that the explosion was the proximate cause of any act or omission on the part of the defendant. In a similar case, the Michigan Supreme Court discussed the situation wherein a gasoline company had installed a used motor-driven gasoline pump upon plaintiff's farm without cost for the convenience of the farmer and to enhance the oil company's gasoline sales. The pump did not work as expected, and the farmer with the bailor's knowledge and consent undertook to change motors on the pump. When this did not prove satisfactory, he put the old motor back and installed it improperly. When he turned the motor on the gasoline caught fire and his son was severely burned and died. The court stated:

"Plaintiff bases his claim for recovery on the assumption that the defendants were guilty of negligence in that they allowed Mr. Boyce to experiment with dangerous equipment with their approval without giving warning instructions about the hazards involved.

"The acts of Mr. Boyce in removing and the failing to replace the cover over the switch box, thus leaving the operation of the gasoline pump exposed to the hazard of open contact of gasoline with electric voltage, and in replacing the priming plug in such manner that it allowed gasoline to be sprayed into or in close proximity with the open switch

box, were the sole proximate cause of the explosion. The defects which caused the explosion did not exist at the time of the leasing, nor were they known to the defendants. * * * We conclude that the defendants were not guilty of any actionable negligence which was a proximate cause of the accident." Boyce v. Cities Service, 321 Mich. 563, 32 N.W. 2d 845 (1948).

In the instant case, the attempt by Glendenning was the sole proximate cause of the explosion. Defendant did not authorize or direct that the tank be welded. At the most, he only indicated that it should be full before welding. That Glendenning did not follow this advice (if indeed he knew of said advice) and proceeded to weld the tank was not the result of any act, omission or breach of any duty on the part of the defendant. On the contrary, Glendenning's act in proceeding to weld the half full tank was the sole proximate cause of the explosion.

■ There is another reason, however, why the plaintiff may not recover in this matter. Our court has stated:

"This court has recognized the concept of duty as it relates to the doctrine of negligence in terms of 'foreseeability' of harm to another. The foreseeability of the danger establishes the duty." Rosendahl v. Tucson Medical Center, 93 Ariz. 368 at 370, 380 P.2d 1020, at 1022 (1963).

Even assuming that the failure of the defendant Evans to attempt to repair the tank after the fire or before partially filling the tank on 3 July, is negligence, there is no foreseeability that this negligence, if it be negligence, would result in the deceased attempting to weld the tank half full of diesel fuel. It has been stated:

"Generally, a person is responsible only for the reasonably foreseeable consequences of his negligent acts, the essential factor in determining liability being whether the damage is of such a kind as a reasonable man should have foreseen, and it is improper to hold that (1) a person,

guilty of a negligent act which results in some trivial foreseeable damage, is liable for all consequences, however unforeseeable and however grave, so long as they can be said to be 'direct' consequences of the negligent act." Headnote in Overseas Tankship (U.K.) Ltd. v. Morts Dock and Engineering Company Ltd., Privy Council, January 18, 1961, 1 All Eng. 404, 100 A.L.R.2d 928.

In the instant case, the defendant could foresee that if he had a duty to repair the tank, the failure to repair the tank or replace it at this time could result in leakage of diesel fuel. He could not foresee that the deceased would attempt to repair the tank by welding with the resulting unfortunate and tragic results.

■ It is the contention of the appellant that this being a motion for summary judgment that the motion may not be granted if there is any question of fact upon which the matter could be submitted to the jury. Our court has stated:

"In considering the motion for summary judgment, this Court must take that view of the evidence most favorable to the plaintiff and give the plaintiff the benefit of all favorable inferences that may be reasonably drawn from the evidence. If, when viewed in this manner, the evidence is such that reasonable men might reach different conclusions as to whether there is a genuine issue as to any material fact the judgment must be reversed." Cummings v. Prater, supra, 95 Ariz. 22, 386 P.2d 28.

And as was also stated:

"* * * and thus the question of negligence and proximate cause is one of fact to be submitted to the jury and not a question of law for the court; if, upon all the facts and circumstances, there is a reasonable chance or likelihood of the conclusions of reasonable men differing, then the question is one for the jury." Figueroa v. Majors, 85 Ariz. 345 at 347, 338 P.2d 803 at 804 (1959).

Because of the lack of foreseeability and the lack of proximate cause, we believe that as a matter of law, the defendant is not liable and that the motion for summary judgment was properly granted.

Judgment affirmed.

STEVENS, C. J., and DONOFRIO, J., concurring.