609 So.2d 1304 (1992)
The WACKENHUT CORPORATION, etc., et al., Petitioners, Cross-Respondents,
v.
Albert LIPPERT, et Ux., Respondents, Cross-Petitioners.
No. 78957.
Supreme Court of Florida.
December 3, 1992.
Rehearing Denied January 3, 1993.
*1305 Bonita L. Kneeland of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, Shelley H. Leinicke of Wicker, Smith, Blomqvist, Tutan, O'Hara, McCoy, Graham & Lane, Fort Lauderdale, and Andrew J. Anthony of the Law Offices of Andrew J. Anthony, P.A., Coral Gables, for petitioners, cross-respondents.
Jos. D. Farish, Jr. of Farish, Farish & Romani, West Palm Beach, for respondents, cross-petitioners.
GRIMES, Justice.
We review Wackenhut Corp. v. Lippert, 591 So.2d 215, 219 (Fla. 4th DCA 1991), in which the court certified the following as a question of great public importance:
WHERE A POSTED TARIFF IN CONJUNCTION WITH THE TICKET FOR CARRIAGE ON A COMMON CARRIER LIMITS LIABILITY FOR CHECKED BAGGAGE OR BAGGAGE ULTIMATELY DELIVERED TO A FLIGHT ATTENDANT FOR STOWAGE IN THE CABIN, BUT THE PASSENGER CHOOSES INSTEAD TO RETAIN CUSTODY OF A PACKAGE, PURSE, HANDBAG, ETC., AND THE PASSENGER IS THEN REQUIRED TO RELINQUISH POSSESSION OF THE ITEM FOR THE PURPOSES OF X-RAY OR OTHER EXAMINATION OR INSPECTION, DOES THE CARRIER'S TARIFF LIMIT ITS LIABILITY, OR THAT OF ITS AGENTS, FOR ORDINARY NEGLIGENCE RESULTING IN LOSS TO THE PASSENGER DURING THE X-RAY OR INSPECTION PROCESS?
We have jurisdiction under article V, section 3(b)(4) of the Florida Constitution.
Felice Lippert and her husband bought tickets on a Delta Airlines' flight from West Palm Beach to New York. On her way to board the flight, Ms. Lippert took a handbag containing valuable jewelry through a security checkpoint at Palm Beach International Airport. Because this portion of the airport was designated exclusively for Delta flights, Delta was responsible for maintaining the checkpoint. Delta contracted with the Wackenhut Corporation to act as its agent in the operation of the checkpoint. The checkpoint included a magnetometer scan of baggage and other carry-on items as well as a scan of the person that occurs as the person walks through a specially designed archway. Ms. Lippert placed her bag on the conveyor belt as required and walked through the archway. When the archway magnetometer alarm sounded, Ms. Lippert was briefly inspected by Wackenhut personnel. She then walked forward to collect her handbag containing the jewelry at the end of the *1306 conveyor, but it was missing. A search of the area for the missing handbag was unsuccessful.
Ms. Lippert sued Delta and Wackenhut for the value of the lost jewelry. As an affirmative defense, Delta and Wackenhut asserted a $1250 limitation on liability which is set forth on her ticket and on Delta's published tariff. The trial judge initially entered a partial summary judgment for Delta and Wackenhut, upholding the limitation on liability to the maximum amount of $1250. The judge reasoned that Ms. Lippert had delivered her property into Delta's custody through its agent, Wackenhut, and had thereby invoked the liability limitation. At the time of trial, a new judge was assigned to the case. The second judge permitted the jury to consider the total amount of damages claimed by Ms. Lippert, though throughout the trial the judge remarked that he would be bound to enter a final judgment for no more than $1250 despite the jury's verdict. The jury returned a verdict in favor of Ms. Lippert for $431,000. At this point, the judge changed his mind regarding the applicability of the liability limitation and entered a final judgment against both defendants for $431,000.
The district court of appeal held that the limitation on liability contained in the ticket and the tariff did not apply under the facts of the case. The court also found that a bailment for the mutual benefit of both the passenger and the airline had been created when Ms. Lippert relinquished possession of her valuables to go through the x-ray machine. Therefore, the trial court was correct in applying the ordinary negligence standard. However, the court felt that the defendants had been unduly prejudiced by the judge's assurances throughout the pretrial proceedings and the trial that the potential judgment could not exceed $1250. Thus, the case was remanded for a new trial with the proviso that the limitation of liability would not apply.
On petition for review in this Court, Delta and Wackenhut argue for the $1250 limitation. In addition, they contend that, because the airport security check was mandated by law, they were gratuitous bailees, who could only be held liable if grossly negligent. Ms. Lippert cross-petitions to review the granting of a new trial.
The airline ticket purchased by Ms. Lippert provided in pertinent part:
NOTICE OF INCORPORATED TERMS
Air transportation to be provided between points in the U.S. (including its overseas territories and possessions) is subject to the individual contract terms (including rules, regulations, tariffs and conditions) of the transporting air carriers, which are herein incorporated by reference and made part of the contract of carriage. Foreign air transportation is governed by applicable tariffs on file with the U.S. and other governments. Incorporated terms may include, but are not restricted to:
... .
2. Limits on liability for baggage, including fragile or perishable goods and availability of excess valuation coverage.

DELTA AIR LINES' CONDITIONS OF CONTRACT
The following conditions of contract supersede the Conditions of Contract on the reverse side of the Passenger's Coupon and apply on all flight segments via Delta Air Lines.
1. Definitions  As used in this contract, "ticket" means this passenger ticket and baggage check of which these conditions and notices form part; "carriage" is equivalent to "transportation"; "baggage" means any article or other property of passengers which is acceptable for transportation under the conditions of contract stated herein, whether checked in the cargo compartment or carried in the cabin of the aircraft; "Delta ticket office" means a ticket sales location of Delta or the office of one of its appointed Travel Agents; "tariffs" mean printed or electronically stored rules and regulations established by Delta *1307 governing the acceptance and carriage of Passengers and baggage including applicable fares, rates and charges for such carriage... .
7.C. Baggage Claim Limits and Procedures (1) DOMESTIC (including U.S.A.  Puerto Rico) Total liability for each passenger's checked baggage  including liability for provable direct or consequential damages  is limited to $1250.00 in the event of loss, damage or delay, unless a higher value is declared in advance and additional charges are paid... .
NOTICE OF BAGGAGE LIABILITY LIMITATIONS
Liability for loss, delay, or damage to baggage is limited as follows unless a higher value is declared in advance and additional charges are paid: ... (2) For travel wholly between U.S. points to $1,250 per passenger on most carriers (a few have lower limits)....
(Emphasis added.)
Delta's published airline tariff stated in pertinent part:
J) BAGGAGE LIABILITY

1) a) DL shall be liable for the loss of, damage to, or delay in the delivery of a fare-paying passenger's baggage, or other property (including carry-on baggage, if tendered to DL's in flight personnel for storage during flight or otherwise delivered into the custody of DL.) Such liability, if any, for the loss, damage or delay in the delivery of a fare-paying passenger's baggage or other property (whether checked or otherwise delivered into the custody of DL), shall be limited to an amount equal to the value of the property, plus consequential damages, if any, and shall not exceed the maximum limitation of USD 1250.00 for all liability for each fare-paying passenger (unless the passenger elects to pay for higher liability as provided for in paragraph 3) below). The passenger shall not be automatically entitled to USD 1,250.00 but must prove the value of losses or damages.
... .
2) Exclusions From Liability

... .
e) DL is not responsible for jewelry, cash, camera equipment, or other similar valuable items contained in checked or unchecked baggage, unless excess valuation has been purchased. These items should be carried by the passenger.
A tariff filed by an air carrier has the force and effect of law. Bella Boutique Corp. v. Venezolana Internacional de Aviacion, S.A., 459 So.2d 440 (Fla. 3d DCA 1984). Further, a duly filed tariff which limits liability for lost baggage is not only incorporated into the contract with the passenger, but also constitutes the law which governs the air carrier's liability for any loss or damage to property. Blair v. Delta Air Lines, Inc., 344 F. Supp. 360 (S.D.Fla. 1972), affirmed, 477 F.2d 564 (5th Cir.1973); Feinstein v. Northeast Airlines, Inc., 150 So.2d 487 (Fla. 3d DCA 1963). The Department of Transportation, to whom Congress transferred authority to regulate aviation, has determined that without baggage liability limitations, an airline's exposure for the loss of valuable items, such as jewelry, would add significantly to airlines' costs, thereby resulting in higher ticket fares. Complaint against limitation of liability tariffs of Braniff Airways, Inc., and Northwest Airlines, Inc., Docket 40373 (U.S. Dep't of Transp. Order Dismissing Complaint issued Dec. 2, 1987). Thus, there is no question as to the validity of the limitation of liability. The issue is whether it was applicable to the facts of this case. We hold that it was.
Ms. Lippert seems to argue that under the emphasized portion of section 1 of her ticket, quoted above, an article only becomes baggage, and therefore triggers the limitation on liability, when it reaches the cargo compartment or the cabin of the aircraft. However, this interpretation would lead to the dubious conclusion that passengers' property in transit to the airplane after being delivered to the airline at the check-in point where tickets are purchased should not be considered baggage. The *1308 phrase in the ticket's definition of baggage  "whether checked in the cargo compartment or carried in the cabin ..."  is more realistically construed as emphasizing that, for purposes of Delta's contract with its passengers, there is no difference between "carry-on" and "checked" baggage. Thus, the ticket's references to the cargo compartment and the cabin are merely descriptive of the words "checked" or "carried," and there can be no doubt that Ms. Lippert's handbag was a passenger's "article or other property ... acceptable for transportation ... whether checked or carried... ." We believe that a ticketed passenger's property, destined for an airplane and in transit between the airport's security checkpoint and the actual airplane, constitutes "baggage" as defined by the ticket.
In any event, the wording of the tariff would encompass Ms. Lippert's handbag regardless of whether the handbag was characterized as "baggage." Under the emphasized portions of section J(1)(a) of the tariff quoted above, Delta's liability for loss of a fare-paying passenger's baggage or "other property" delivered into the custody of Delta is limited to $1250. Clearly, Ms. Lippert's handbag was delivered into the custody of Delta at the security checkpoint. At that time she was a ticketed passenger, so the baggage liability limitation was applicable.
We cannot accept Ms. Lippert's contention that our interpretation will mean that an article carried by a nonticketed person which had gone through the checkpoint screening process would be subject to the $1250 limitation. Nonticketed persons have not contracted to a limitation of liability as have those persons who purchase tickets. Therefore, the liability for articles of nonticketed passengers would be determined by the ordinary laws of bailment.
We hold that the $1250 baggage limitation of liability was applicable to the loss of Ms. Lippert's handbag while it was in the possession of Delta's agent at the airport security checkpoint.[1]See Baker v. Lansdell Protective Agency, Inc., 590 F. Supp. 165 (S.D.N.Y. 1984) (jewelry at airport security checkpoint held lost "in the course of any of the operations of embarking or disembarking" under the provisions of the Warsaw Convention); Feature Enters., Inc. v. Continental Airlines, 745 F. Supp. 198 (S.D.N.Y. 1990) (loss of jewelry case checked with sky cap at curbside prior to embarkation on domestic flight subject to tariff limit of $1250); but see Tremaroli v. Delta Airlines, 117 Misc.2d 484, 458 N.Y.S.2d 159 (N.Y. Civ. Ct. 1983) (tariff limitation of liability held inapplicable to property lost at airport security checkpoint because "baggage ... was never placed on the airplane.").
While we find the $1250 liability limitation applicable in this case, we decline to answer the certified question because it does not precisely track the language of the tariff. We agree with the district court of appeal that the bailment created when Ms. Lippert surrendered her handbag for inspection was for the mutual benefit of the passenger and the airline, and we adopt the court's reasoning in this respect. Our disposition of the baggage liability limitation issue renders the cross-petition moot. Because the case was tried under the proper standard of care, there is no need for a retrial. We quash the decision below to the extent that it is inconsistent with our opinion and remand the case for entry of a judgment in favor of Ms. Lippert for $1250.
It is so ordered.
OVERTON, McDONALD, SHAW and HARDING, JJ., concur.
KOGAN, J., concurs in part and dissents in part with an opinion.
BARKETT, C.J., recused.
KOGAN, Justice, concurring in part, dissenting in part.
I agree with the majority to the extent it approves a portion of the opinion below. *1309 However, I would go further and approve the opinion in full. I agree with the district court's well reasoned conclusion that the tariff and its limitations are not applicable when a passenger relinquishes belongings for a security check prior to boarding aircraft.
The majority's analysis extends the tariff's limitation solely to those security agencies that are contractors of the airline issuing the passenger's ticket. This reduces the tariff's applicability to mere happenstance, since in some instances the security points will not be managed by contractors of the issuing airline and in others the people suffering losses will not hold tickets issued by a contracting airline. The net effect is that the burden of a loss will be shifted primarily to airport authorities, their contractors, or the security companies operating checkpoints, to the extent they are unable to claim the tariff immunity the majority now extends to the airlines' contractors.
For this reason, the economic justifications cited by the majority are not very persuasive. See majority op. at 1307. Liability will continue to exist in many cases; it merely will be shifted onto parties other than the airline issuing the ticket. This in turn will drive up the costs of operating airports  an expense that sooner or later will be passed on to the airlines and ultimately their passengers, notwithstanding the tariff. If the goal is to keep down costs, as the majority states, id., then this would seem a strange and unfair method of achieving that result.
In terms of real-world effects, the most logical solution to the economic problems noted by the majority either would be (a) holding that the tariff limitations apply to anyone going through an airport security checkpoint, or (b) holding that the tariff limitations do not apply to airport security checkpoints at all. The first of these approaches cannot be squared with basic contract law, because people are not bound by contracts they have not entered, as the majority notes. Only the second option remains viable.
Accordingly, I would hold that the tariff's limitations do not apply to property going through security checkpoints in airports. The tariff is at best ambiguous on this question, and there is no good reason in law or policy to avoid construing the ambiguity so as to achieve the most logical and fair result.
NOTES
[1] Delta has not contended that it should be exonerated from liability for loss of the jewelry under section J(2)(e) of the tariff.