GROSS, Judge.
Fireman’s Fund Insurance Company issued a commercial general liability policy to the predecessor of Dollar Systems, Inc. d/b/a General Rent-A-Car (“General”). The policy obligated Fireman’s Fund to “pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which [the] insurance applies.” Exclusion 2.g. of the policy provided:
2. Exclusions
This insurance does not apply to:
}¡! ' * # * * *
g. Bodily injury or property damage arising out of the ownership, maintenance, use, or entrustment to others of any ... auto ... owned or operated by or rented or loaned to any insured. Use includes operation and loading or unloading.
In 1994, Sean Monaco, as the legal guardian of Grace Monaco, sued General in federal court. The complaint arose out of injuries sustained in an automobile accident by Grace Monaco, the spouse of a vice president of General. General provided Monaco with a 1989 Toyota for her personal use. The second amended complaint alleged that Monaco became intoxicated at a corporate event and, ■ as a result, lost control of the Toyota. One count of the complaint sought damages for General’s negligent entrustment of the Toyota to Monaco.
General submitted the lawsuit to Fireman’s Fund requesting that it defend and indemnify it. Fireman’s Fund filed a complaint for declaratory relief seeking a declaration that the policy provided no coverage based on exclusion 2.g„ Each side moved for summary judgment. The trial court granted General and Monaco’s summary judgment, denied the insurance company’s motion, and *1030 entered a final judgment that Fireman’s Fund was obligated to indemnify and defend General in the Monaco lawsuit.
The salient facts concerning the Toyota are not in dispute. The car was owned by Southeast Toyota and provided to General as a courtesy car. General was not permitted to sell or lease the car to a third party, but could entrust the vehicle to whomever it chose. No rental or lease agreement existed for the use of the car and General made no payments for its use. General was required to obtain automobile insurance for the Toyota.[1] Southeast Toyota expected to receive the Toyota back from General, although there was no set time for its return. Vehicle manufacturers and distributors typically provide courtesy cars to rental car companies as an inducement to purchase their product. General purchased 6,000 to 7,000 cars a year from Southeast Toyota. The number and type of courtesy cars were negotiated at the same time that General purchased cars for its fleet.
This case turns on the interpretation of the term “loaned” in exclusion 2.g. of the policy. The rule followed in Florida is that “policy language be read as it would be understood by reasonable people, i.e., given its plain and ordinary meaning.” State Farm Fire & Cas. Ins. Co. v. Deni Assocs. of Florida, Inc., 678 So.2d 397 (Fla. 4th DCA 1996). With regard to personal property, the most frequently encountered definition of “loan” is “a grant of the temporary use of something.” Random House Dictionary of the English Language 840 (1967). Similarly, Webster’s II New Riverside University Dictionary defines loan as “something lent for temporary use” and “lend” as “[t]o give or allow the use of (something) temporarily on the condition that it or its equivalent will be returned.” Webster’s II New Riverside University Dictionary 686, 700 (1984).
Applying these definitions of a loan, the courtesy ear arrangement in this ease falls within the exclusion of the policy. The arrangement was temporary and contemplated the return of the car. Such an interpretation of a “loan” is consistent with the apparent intent of the exclusion, which was to cover those situations where an insured might lawfully exercise dominion over a vehicle — as an owner, by gift, trade, or purchase; as a lessee or as a borrower.
Peters v. Thompson, 42 So.2d 91 (Fla.1949), relied upon by General, does not compel a different result. Peters did not construe the term “loan” in the context of an insurance policy. In that case the supreme court dealt with the propriety of the trial court’s refusal to allow an amendment to a pleading at the time of a final hearing. Finding that the trial court had not abused its discretion, the supreme court observed that the proposed amendment failed to establish an enforceable claim of rent for the use of a bulldozer. Id. at 92. The amendment at issue alleged that “the defendant borrowed from the plaintiff and the plaintiff loaned to the defendant a certain bulldozer.” The court ruled that such language did not state a claim for “liability on the part of the defendant to the plaintiff for the reasonable value of the use of such bulldozer.” Id. The precise holding in Peters was the following:
We do not find that the words ‘borrow and ‘loan’ connote, or indicate there should be, payment for the use of the chattel which is the subject matter of the loan.
In dicta, the supreme court then quoted two different definitions of the term “loan.” The first definition was “the bailment of an article for a certain time to be used by the borrower without paying for the use.” Id. The second definition was far more narrow, defining the “loan” of a chattel as “[a] bailment without reward; consisting of the delivery of an article by the owner to another person, to be used by the latter, gratuitously, and returned either in specie or in kind.” Id.
The purpose of these different quotations was not to fix in Florida law the definition of “loan” in all contexts. The supreme court used the two different definitions merely as examples to support its conclusion that the *1031 terms “borrow” and “loan” did not connote an obligation to pay rent for a bulldozer.
For this reason, we reject General’s analytical approach based on the proposition that a “loan” can only be a gratuitous “bailment without reward” under the second definition quoted in Peters. The distinction between a bailment without reward and a bailment for mutual benefit is legally significant because of the duty of care that the bailee must exercise in order to avoid liability for loss or damage to the bailed property. Where a bailment is for the mutual benefit of the parties, the bailee is liable for ordinary negligence; if the bailment is gratuitous, the bailee is liable only for gross negligence. See Armored Car Serv., Inc. v. First Nat’l Bank of Miami, 114 So.2d 431, 434 (Fla. 3d DCA 1959).
Not directed at the duty of care owed with regard to property, the concept of a “loan” as used in the insurance policy has to do with how the insured came into possession of a vehicle. The distinction between a loan and a bailment is demonstrated by those courts that have recognized that a bailment for mutual benefit can arise from a loan of personal property. See State v. Standard Oil Co. of California, 3 Ariz.App. 389, 414 P.2d 992 (1966); Hartmann v. Black & Decker Mfg. Co., 16 Conn.App. 1, 547 A.2d 38 (1988); Global Tank Trailer Sales v. Textilana-Nease, Inc., 209 Kan. 314, 496 P.2d 1292 (1972); Nelson v. Fruehauf Trailer Co., 20 N.J.Super. 198, 89 A.2d 445 (App.Div.1952), aff'd, 11 N.J. 413, 94 A.2d 655 (1953); see also 8 Am.Jur. 2D Bailments § 26 (1980). The policy’s use of the term “loan” is broad enough to encompass both types of bail-ments.
This view is consistent with the expansion of the notion of a bailment for mutual benefit from one in which “the parties contemplate some price or compensation in return for the benefits flowing from the fact of the bailment,” Armored Car Serv., 114 So.2d at 434, to one where the benefit from the transaction does not involve the passage of money for the use of the property, but of other intangible benefits attendant' to the relationship between the parties. See Wackenhunt Corp. v. Lippert, 609 So.2d 1304, 1308 (Fla.1992)(holding that an airline passenger’s delivery of a handbag to security personnel at an airport security checkpoint constituted a bailment for the mutual benefit of the. passenger and the airline). By expanding the notion of a bailment for mutual benefit, courts increase the number of situations where a bailee is obligated to exercise ordinary care with regard to certain property.
When given its plain and ordinary meaning, the insurance policy’s use of the term “loan” was not an adoption by reference of thé law of bailment, drawing its meaning from an analysis of the relationship between the lender of a vehicle and the insured. The policy exclusion covers the courtesy car arrangement at issue in this case and Fireman’s Fund has neither the duty to indemnify, nor the duty to defend. See Marr Invs., Inc. v. Greco, 621 So.2d 447, 449 (Fla. 4th DCA 1993); International Surplus Lines Ins. Co. v. Markham, 580 So.2d 251, 253 (Fla. 2d DCA 1991).
Reversed and remanded with directions to enter judgment in favor of appellant.
WARNER and SHAHOOD, JJ., concur.

. This appeal does not involve the various automobile liability insurance policies purchased by General.