The sole issue presented in this case is whether the plaintiff's tort claim against an air carrier for damages for lost jewelry that was stored in luggage is preempted by federal law. *Page 328 
 Facts
The facts of this case appear undisputed. On January 24, 1998, Nobie Decoff purchased a ticket from Delta Air Lines, Inc. ("Delta"), for a flight on February 22, 1998, from Miami, Florida, to Atlanta, Georgia. The following statement was printed on that ticket:
"NOTICE OF INCORPORATED TERMS
 "Air transportation to be provided between points in the U.S. (including its overseas territories and possessions) is subject to the individual contract terms (including rules, regulations, tariff and conditions) of transporting air carriers, which are herein incorporated by reference and made part of the contract of carriage. . . . Incorporated terms may include, but are not limited to:
"1. Limits on liability for personal injury or death;
 "2. Limits on liability for baggage, including fragile or perishable goods and availability of excess valuation coverage;
". . . .
 "You can obtain additional information on items 1 through 6 above at any U.S. location where the transporting air carrier's tickets are sold.
 "You have the right to inspect the full text of each transporting air carrier's rules at its airport and city ticket offices. You also have the right, upon request, to receive free of charge the full text of the applicable terms incorporated by reference from each of the transporting air carriers. Information on ordering the full text of each carrier's terms is available at any U.S. location where the air carrier's tickets are sold."
(C.R. at 140.) The terms printed on Decoff's ticket incorporated by reference additional terms in a document Delta refers to as its "tariff agreement," which states:
 "[Delta] shall be liable for the loss of, change to, or delay in the delivery of a fare-paying passenger's baggage, or other property (including carry-on baggage, if tendered to Delta's inflight personnel for storage during flight or otherwise delivered into the custody of [Delta]). Such liability, if any, for the loss, damage or delay in the delivery of a fare-paying passenger's baggage or other property (whether checked or otherwise delivered into the custody of [Delta]), shall be limited to an amount equal to the value of the property, plus consequential damages, if any, and shall not exceed the maximum limitation of [$]1250.00 for all liability for each fare-paying passenger (unless the passenger elects to pay for higher liability as provided for . . . below). The passenger shall not be automatically entitled to [$]1250.00 but must prove the value of losses or damages. . . . These limitations also shall apply to baggage or personal property accepted by [Delta] for temporary storage at a city or airport ticket office or elsewhere before or after the passenger's trip."
(C.R. at 166.)
On the date of the flight for which the ticket was issued, February 22, 1998, Decoff and her husband arrived in Miami at the end of a cruise. When they disembarked from the cruise ship, a porter carried their luggage down the pier to a location where a Delta agent was accepting luggage for check-in and transfer to Delta flights departing from the Miami airport. The Decoffs had not obtained necessary security stickers for their luggage, and the Delta agent told them that she could not accept their luggage for check-in without the stickers. Mr. Decoff testified, and his wife confirmed his testimony, that the Delta *Page 329 
agent told the Decoffs, referring to their luggage: "Just put it right here; I'll take care of it; it will be safe with me." Delta does not dispute this testimony.
The Decoffs turned their luggage, including Mrs. Decoff's carry-on bag, over to the Delta agent and left to obtain the security stickers. When they returned to the Delta check-in location, their bags were gone. The Delta agent said that the bags were already on a truck for transfer to the airport. Mrs. Decoff told the agent that she did not want to check her carry-on bag. The items in the bag included jewelry. The Delta agent refused to retrieve the carry-on bag.
When the Decoffs arrived at the Atlanta airport, the carry-on bag was missing. A Delta agent returned it to them at their Montgomery home a few days later, but Mrs. Decoff's jewelry, which was worth $6,327.70, was missing.
 Procedural History
Mrs. Decoff sued Delta in the Montgomery County District Court, alleging claims of negligence and breach of contract. In her negligence claim she alleged that Delta had "negligently handled" an item of luggage and that, as a result of its negligence, she had suffered damage "including but not limited to the loss of the family jewelry and mental anguish." (C.R. at 3.) The district court entered a judgment awarding her damages of $5,000. Delta appealed to the circuit court.
In the circuit court, Delta moved for a summary judgment, arguing that Decoff's claims were preempted by federal law. The circuit court denied the motion, and a bench trial ensued. At the close of her case, Decoff dismissed her breach-of-contract claim. The trial judge subsequently entered a judgment awarding Decoff damages of $6,327. Delta moved the court to grant a new trial or to vacate the judgment; the trial court denied the motion.
Delta appealed. The Court of Civil Appeals, on December 3, 1999, affirmed, without an opinion. Delta Air Lines, Inc. v. Decoff (No. 2981206), ___ So.2d ___ (Ala.Civ.App. 1999) (table). Delta petitioned this Court for certiorari review, and we granted its petition.
After carefully reviewing the applicable law, we conclude that the provisions of federal law apply, that Decoff's state-law claim has been preempted, and that the judgment of the Court of Civil Appeals is therefore due to be reversed.
 Discussion
In reviewing the disposition of a motion for summary judgment, "we utilize the same standard as . . . the trial court in determining whether the evidence before [it] made out a genuine issue of material fact" and whether the movant was "entitled to a judgment as a matter of law." Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988). Rule 56(c), Ala.R.Civ.P., provides that a summary judgment is proper when the movant makes a prima facie showing that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law, unless the nonmovant rebuts that showing by presenting substantial evidence creating a genuine issue of material fact. See
§ 12-21-12, Ala. Code 1975; Cain v. Sheraton Perimeter Park S. Hotel,592 So.2d 218, 219-20 (Ala. 1991).
The facts are not in dispute. Thus, our inquiry is limited to determining whether, based on the facts and the applicable law, Delta was entitled to a judgment as a matter of law.
This Court has previously considered a case involving claims by defendant airlines that federal law preempted state-law causes of action. In Eastern Air Lines v. Williamson, 282 Ala. 421, 211 So.2d 912 *Page 330 
(1968), Eastern Air Lines failed to transfer the plaintiff's luggage to her connecting flight when she changed planes. Eastern rerouted the luggage onto a flight that crashed, and the plaintiff's luggage was not recovered. The plaintiff sued Eastern, alleging that it had breached its contract with her. This Court noted that 49 U.S.C.A. § 1373, part of the Federal Aviation Act of 1958 (49 U.S.C.A. § 1301 et seq.), required every airline to file a tariff with the Civil Aeronautics Board. The terms of a tariff were deemed by law to be incorporated into the contract of carriage. Accordingly, this Court held that Eastern's liability was limited to $250, as provided in its tariff.[1]
Since Williamson was decided, a significant body of law has evolved that is relevant to the question in this case. Until 1978, the Civil Aeronautics Board ("C.A.B.") regulated the interstate airline industry, under the authority of the Federal Aviation Act of 1958, 72 Stat. 731, as amended, 49 U.S.C.A. § 1301 et seq. (1976 ed.) (the "1958 Act"). Although the C.A.B. exercised broad authority over the industry, the 1958 Act did not include a preemption clause. In fact, the 1958 Act included a savings clause, which provided:
 "Nothing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies."
Federal Aviation Act of 1958, Pub.L. No. 85-726, § 1106, 72 Stat. 731, 798 (1958) (formerly codified at 49 U.S.C. § 1506 (1976 ed.), now recodified at 49 U.S.C.A. 40120 (1997): "A remedy under this part is in addition to any other remedies provided by law.").
In 1978, seeking "to encourage, develop, and attain an air transportation system which relies on competitive market forces to determine the quality, variety, and price of air services," the Congress enacted the Airline Deregulation Act of 1978 (the "A.D.A."), 92 Stat. 1705, ending the C.A.B.'s regulatory oversight of the interstate airline industry. The A.D.A. included a preemption clause, which provided:
 "[N]o State . . . shall enact or enforce any law, rule, regulation, standard or other provision having the force and effect of law relating to rates, routes, or services of any air carrier having authority . . . to provide interstate air transportation."
92 Stat. at 1707; 49 U.S.C. § 1305 (1976 ed., supp. 3). In 1994, the Congress revised this section and recodified it as49 U.S.C.A. § 41713(b)(1):
 "[A] State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route or service of an air carrier . . . ."
In making its revision, the Congress expressly stated that it intended to make no substantive change. Pub.L. 103-272, § 1(a).
In two recent cases, American Airlines, Inc. v. Wolens, 513 U.S. 219
(1995), and Morales v. Trans World Airlines, Inc., 504 U.S. 374 (1992), the United States Supreme Court has examined the A.D.A. preemption clause. Neither case squarely addresses the issue we face today. However, they are both instructive.
In Morales, the Court considered "whether the [A.D.A.] pre-empts the *Page 331 
States from prohibiting allegedly deceptive airline fare advertisements through enforcement of their general consumer protection statutes."Morales, 504 U.S. at 378. The Court noted that preemption may be either express or implied and that the touchstone of its analysis is determining Congress's intent. Id. at 383. To determine that intent, the Court turned to an examination of the language of the preemption provision, focusing on the phrase "relating to." The Court defined the phrase as "having a connection with, or reference to, airline `rates, routes, or services.'" Id. at 384. Thus, the Court held that, by using that phrase, Congress "express[ed its] broad pre-emptive purpose." Id.
at 383. Rejecting the argument that "only state laws specifically addressed to the airline industry are pre-empted," id. at 386, the Court concluded that the general consumer-protection statutes were preempted because they purported to govern airline advertisements and, thus, related to airline rates. The Court noted that even "beyond the guidelines' express reference to fares, it is clear as an economic matter that state restrictions on fare advertising have [a] forbidden significant effect upon fares." Id. at 388. At the conclusion of its opinion, the Court included a significant caveat to its broad definition of "relates to." In response to the argument that it was stepping onto a slippery slope, the Court stated that "`[s]ome state actions may affect [airline fares] in too tenuous, remote, or peripheral a manner' to have pre-emptive effect.'" Id. at 390, quoting Shaw v. Delta AirLines, Inc., 463 U.S. 85, 100 n. 21 (1983).
The Supreme Court decided Wolens three years after it had decidedMorales. In Wolens, a class of participants in an airline's frequent-flyer program filed an action alleging that the airline had breached its contract with them.[2] The airline argued that because the A.D.A. had transferred some of the C.A.B.'s oversight functions to the U.S. Department of Transportation ("D.O.T."), the D.O.T. should resolve disputes between airlines and their customers. In other words, the airline argued that the effect of the A.D.A.'s preemption clause was that state courts could not hear breach-of-contract claims.
The Court concluded that the plaintiffs' complaint did "relate" to the airline's rates. However, it also concluded that pursuing the class's breach-of-contract claim in a state court did not amount to "enforc[ment] [of] any law, rule, regulation, standard, or other provision having the force and effect of law," 513 U.S. at 229, as the revised preemption clause prohibits. The Court held that the preemption clause did not "shelter airlines from suits . . . seeking recovery solely for the airline's alleged breach of its own, self-imposed, undertakings. . . . [T]erms and conditions airlines offer and passengers accept are privately ordered obligations . . . ." Id. at 228-29. Thus, the Court concluded "that the [A.D.A.] permits state-law-based court adjudication of routine breach-of-contract claims." Id. at 232. The Court further explained:
 "The [A.D.A.'s] preemption clause, § 1305(a)(1), read together with the [1958 Act's] saving clause, stops States from imposing their own substantive standards with respect to rates, routes, or services, but not from affording relief *Page 332 
to a party who claims and proves that an airline dishonored a term the airline itself stipulated. This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies texternal to the agreement."
Id. at 232-33.
As a result of Morales and Wolens, it is clear that general breach-of-contract claims may be resolved by state courts. Short of that relatively clear rule, courts have struggled to define the criteria that will trigger the application of the preemption provisions.
Two federal appellate courts have concluded that claims by airline employees or former employees that they were victims of age discrimination do not trigger preemption because they are not related to the airline's rates, routes, or services. See Parise v. Delta Airlines,Inc., 141 F.3d 1463 (11th Cir. 1998); and Abdu- Brisson v. Delta AirLines, Inc., 128 F.3d 77 (2d Cir. 1997). One federal appellate court has held that an airline's decision to allow smoking on its international flights was not related to a service and, thus, that a tort claim alleging injuries as a result of that decision was not preempted. Duncan v. Northwest Airlines, Inc., 208 F.3d 1112 (9th Cir. 2000).
Two state supreme courts have held that personal-injury claims do not trigger preemption. In Continental Airlines, Inc. v. Kiefer, 920 S.W.2d 274
(Tex. 1996),[3] the plaintiffs in two consolidated cases alleged that they had been injured as a result of negligence on the part of agents of Continental Airlines. The Texas Supreme Court reviewed Morales andWolens and attempted to apply the rules of those cases to the plaintiffs' negligence claims. In light of the broad definition of "related to" in Morales, the court concluded that the plaintiffs' claims did relate to the service of the airline. The court reasoned:
 "[A personal-injury] negligence action is not related to airline rates and services quite as directly as the contract claims in Wolens, but the impact of tort liability on an airline's rates and services is no less real. The effect is certainly not as `tenuous, remote, or peripheral' as a prohibition against obscenity in advertising, the example Morales gives of a non-pre-empted law. 504 U.S. at 390, 112 S.Ct. at 2040. Tort liability cannot but have, in Morales' words, `a significant impact upon the fares [airlines] charge. . . .'"
Kiefer, 920 S.W.2d at 281. However, the Court held that pursuing a personal-injury negligence claim did not amount to enforcing a state law, as that concept is used in the A.D.A. preemption clause. In reaching that conclusion, the court acknowledged the difficulty in drawing the line between those claims that are preempted and those that are not. "The answer to the question [whether the claim was preempted] depends upon several considerations expressed in Wolens, not all of which point to the same answer." Id. at 281. In reaching its conclusion, however, the court stated:
 "Fundamentally, the purpose of [A.D.A.] preemption is not to absolve airlines from all liability under state law, but to prohibit state regulation of air carriers, direct or indirect. Congress' concern was [to ensure] `that the States would not undo federal deregulation with regulation of their own.' Morales, 504 U.S. at 378, 112 S.Ct. at 2034. Common-law negligence actions to recover *Page 333 
damages for personal injuries do not impinge in any significant way on Congress' concern. Such actions did not impair federal regulation before the [A.D.A.], and we do not see how they impair deregulation since."
Id. at 282. The Court, however, also stated:
 "We recognize that with negligence law, and other tort law, there is a greater risk that state policies will be too much involved than there is with contract law, especially in the area of damages. For example, recovery of punitive damages for negligence is, depending on the State involved, essentially unlimited, limited by judicial rule, limited by statute, shared between the plaintiff and the state, or disallowed altogether. One could easily argue that the threat of punitive damages against airlines has a greater regulatory effect than liability for actual damages."
Id. at 282.
At least one federal appellate court has also recognized that "[s]tates can impose their own substantive standards through the common law as well as through statutory enactments." Travel All Over The World,Inc., v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1435 (7th Cir. 1996). In that case, the court concluded that tort claims based on an airline's refusal to transport passengers were preempted. In concluding that the plaintiffs' claims were preempted, the court wrote:
 "The plaintiffs also argue that Wolens has liberated all common law claims from the [A.D.A.]'s preemptive scope, but Wolens did not distinguish between common law and statutory claims. Rather, it distinguished between [states'] enforcing private contracts and imposing their own substantive standards external to those contracts. 513 U.S. at 232-33, 115 S.Ct. at 826. States can impose their own substantive standards through the common law as well as through statutory enactments.[*] Wolens did not intend to overrule the long line of cases that have found various common law claims preempted by the [A.D.A.] See, e.g., [Illinois Corp. Travel, Inc. v. American Airlines, Inc., 889 F.2d 751, 754 (7th Cir. 1989)]; West v. Northwest Airlines, Inc., 995 F.2d 148, 151 (9th Cir. 1993). We recognize that the plaintiffs' intentional tort claims are based on the same underlying conduct as . . . their contract claim, which is not preempted by § 1305(a)(1). However, while Wolens protects contract claims that seek to enforce private agreements from preemption, it does not similarly shelter tort claims. The intentional tort claims therefore constitute the `enactment or enforcement' of a law.
"_______________
 "[*]In fact, Wolens acknowledged this by noting that `some state-law principles of contract law . . . might well be preempted to the extent they seek to effectuate the State's public policies . . . .' 513 U.S. at 232 [n. 8], 115 S.Ct. at 826 n. 8 (quoting Brief for the United States as Amicus Curiae)."
73 F.3d at 1435. Similarly, in Smith v. Comair, Inc., 134 F.3d 254 (4th Cir. 1998), the court held that a plaintiff's claim an airline had falsely imprisoned him by refusing to allow him to board a connecting flight was preempted.
In two cases involving claims of negligence that allegedly resulted in damage or loss of luggage, the United States Court of Appeals for the Ninth Circuit and the Florida Supreme Court held the plaintiffs' claims to be preempted. See Diero v. American Airlines, Inc., 816 F.2d 1360
(9th Cir. 1987); and Wackenhut Corp. v. Lippert, 609 So.2d 1304 (Fla. 1992). *Page 334 
Reading Morales and Wolens together with the language of the preemption provision, we conclude that a claim is preempted if it is "related" to an airline's rates, routes, or services and if pursuing the claim in a state court amounts to enforcing a state law.
Decoff does not dispute that under certain circumstances her claim would have been preempted, but she argues in her brief that "the undisputed facts in the case at bar clearly show that Delta's agent stepped outside the tariff boundaries when she offered to protect and keep safe the luggage until Decoff's return (including the carry-on bag that was not being checked with Delta)."
We cannot accept Decoff's argument. The evidence shows that Delta contracted to transport the Decoffs by air from Miami to Atlanta. That contract, as represented by the "tariff" incorporated into the contract by the ticket, also included the transportation of the Decoffs' baggage. (C.R. at 97.) Therefore, the claim that Delta negligently handled Mrs. Decoff's baggage is a claim "related to" Delta's service, as that term is used in the preemption clause. Although Mrs. Decoff attempts to distinguish this Court's Williamson case, we conclude that the law established in Williamson is broad enough to cover the factual situation presented in this case. Williamson was decided by this Court in 1968, 10 years after the Congress had adopted the Federal Aviation Act of 1958, which included the savings clause, and 10 years before the Congress adopted the A.D.A., which included the preemption clause. Thus, even before the preemption clause was adopted, this Court had concluded that the Williamson plaintiff's negligence claim was "determined by federal law" and that the liability of the air carrier was limited by the terms of the tariff. Williamson, 282 Ala. at 425-26, 211 So.2d at 915.
Accordingly, we reverse the judgment of the Court of Civil Appeals, and we remand the cause with instructions for that court to remand it to the circuit court for an order or proceedings consistent with this opinion.
REVERSED AND REMANDED.
Hooper, C.J., and Houston, See, Lyons, Johnstone, and England, JJ., concur.
[1] This Court cited Williamson for the same general proposition, that terms in a tariff are construed as part of the contract of carriage, inIyegha v. United Airlines, Inc., 659 So.2d 45 (Ala. 1995); and Newsome v.Trans International Airlines, 492 So.2d 592 (Ala. 1986).
[2] The class plaintiffs also alleged that the airline had breached an Illinois consumer-protection statute. The Supreme Court, on the authority of Morales, held that the statute-based claim was preempted.
[3] See also Knopp v. American Airlines, Inc., 938 S.W.2d 357 (Tenn. 1996) (holding that a personal-injury negligence claim was not preempted).