May, J.
The plaintiffs appeal a final judgment in a wrongful death action. They argue the *766 trial court erred in certain evidentiary rulings and in giving a special jury instruction. Two of the defendants cross-appeal an order denying their motion to.limit the judgment against the owner of one of the vehicles, , . pursuant to section 324.021(9)(b)(3), Florida Statutes (2014). We affirm all issues on direct appeal without further comment. We reverse on the cross-appeal.
A bizarre sequeneé of events on a two-lane road resulted in the tragic death of the plaintiffs’ daughter. Their daughter, and a second vehicle following her, attempted to pass two tractor-trailers. They began their attempt in a passing zone, but ended their attempt in a no-passing zone. When they cut back in front of the two tractor-trailers, they encountered a vehicle stopped to make a left turn.
The plaintiffs’ daughter was able to stop, but the vehicle following .her rear-ended her car, forcing her into oncoming traffic where another truck traveling in the opposite direction collided with her vehicle. She died as a result of the accident. The plaintiffs filed suit against the driver and owner of the vehicle that rear-ended their daughter’s vehicle, the driver and owner of the truck that ultimately collided with her, and the owner of the trailer attached to his truck.
The plaintiffs’ theory against the truck driver in the second collision was that he negligently failed to avoid the accident, due in part to his age and physical condition, which caused him to have a slower reaction time than reasonable. The plaintiffs’ accident-reconstruction expert rendered his opinion on the truck driver’s negligence without having reviewed his medical records.
Prior to trial, the plaintiffs obtained the truck driver’s medical records, and deposed his treating physicians, over his objection and request for a protective order. The plaintiffs ultimately sought a compulsory medical examination just prior to trial. The trial court granted the motion, but we granted a petition for writ of certiorari. Gray v. Richbell, 144 So.3d 573 (Fla. 4th DCA 2014).
Based on our decision, the trial court quashed its order permitting the compulsory medical examination and ruled that “until the Fourth issues a final ruling, there will be no mention of the medical condition.”[1] The plaintiffs proffered their expert’s medical testimony outside the presence of the jury. He would have testified that' the truck driver suffered from a form of dementia that causes poor reaction time and perception. The trial court also granted the truck driver’s motion to exclude evidence regarding his medical condition without prejudice pending our opin-ión.
During trial, and in response to a question posed by plaintiffs’ counsel, the truck driver stated that he had not taken any continuing courses on truck driving, but he had “safe driving” on his license. During a sidebar, plaintiffs’ counsel told the court that the truck driver’s commercial license did not have “safe driver” on it, and asked to impeach him on that fact. The court prohibited counsel from doing so because a pretrial order prohibited the plaintiffs from introducing any evidence of the truck driver’s driving record.
Plaintiffs’ counsel then asked the truck driver whether the words “safe driver” appeared on his license.' The truck driver’s attorney objected and moved for a mistri *767 al, arguing that the plaintiffs violated the pretrial order by questioning the truck driver about his license. The trial court denied the motion for mistrial.
The trial judge then asked the truck driver how he knew he had “safe driver” on his license, and he responded someone at the Department of Motor Vehicles told him. When the court reviewed the commercial license, however, it did not include a designation for “safe driver.” But,' the court noted that the truck driver’s Florida motor vehicle driver’s license did designate “safe driver.” The trial court denied the plaintiffs’ request to impeach the truck driver about the “safe driver” designation.
The truck driver’s attorney asked the trial court to instruct the jury that there were no issues with the truck driver’s commercial driver’s license. The trial court agreed to do so. The plaintiffs argued against the jury instruction because they believed it gave judicial imprimatur to the truck driver’s statement that his license indicated he was a “safe driver.” The trial court adhered to its previous ruling, and read the following: “The Court has determined and now instructs you that at the time of the subject accident [the truck driver] had a valid commercial driver’s license.”
The jury found the driver of the car that rear-ended the daughter’s vehicle .negligent and 60% at fault, with the decedent comparatively negligent and 40% at fault. The jury found no negligence on the part of the truck driver. The court denied the plaintiffs’ motion for a new trial and entered final judgment for the truck driver, his companies, and the trailer’s owner.
Post-verdict, the owner of the vehicle that rear-ended the plaintiffs’ daughter moved to limit the judgment to $100,000, based on section 324.021(9)(b)(3), Florida Statutes, which limits the liability of .the motor vehicle owner who “loans” a vehicle to a permissive user. The court denied the motion, finding there was no “loan” of. the vehicle,, but rather a joint undertaking by the owner and driver. The court entered judgment against the owner and driver for $750,000, their percentage of the total damages based on the comparative negligence finding.
The plaintiffs now appeal the judgment. The owner and driver of the vehicle that rear-ended the decedént have cross-appealed.
We have de novo, review. Fla. Dep’t of Envtl. Prot. v. ContractPoint Florida Parks, LLC, 986 So.2d 1260, 1264 (Fla. 2008).
The owner and driver argue the car was loaned to the driver as a permissive user, entitling the owner to the financial limitation set forth in section 324.021(9)(b)(3). The plaintiffs respond the trial court correctly found no loan occurred because there was a joint undertaking by the owner and driver as both were in the car at the time of the accident. ,
The statute does not define the word “loan,” but the term is not so extraordinary that it cannot be applied by use of its own plain meaning without reference to some outside source. That being said, to loan is to give temporary control of property to another- without relinquishing ownership with the intent that you regain control over the property. Loan, The Random House Dictionary of the English Language (1967).
No one disputes that the passenger, not the owner, of the vehicle was driving at the time of the accident. They had traveled together to South Florida and were returning home at the time of the accident. The owner had asked the passenger to drive while he slept in the passenger seat. The sole claim against the owner was *768 based on his vicarious liability under Florida’s dangerous instrumentality doctrine.
Under that doctrine, a car owner is liable for damages caused by the operation of his vehicle by a permissive user. See Hertz Corp. v. Jackson, 617 So.2d 1051, 1053 (Fla. 1993). The vicarious liability of a permissive user under the dangerous instrumentality doctrine is then limited by Florida’s financial responsibility statute, section 324.021(9)(b)(3).
That section provides in part: “The owner who is a natural person and loans a motor vehicle to any permissive user shall be' liable for the operation of the vehicle or the acts of the operator in connection therewith only up to $100,000 per person ....”§ 324.021(9)(b)(3).
The legislature added this provision to address the real and perceived inequities created by the application of the dangerous instrumentality doctrine. See Fischer v. Alessandrini, 907 So.2d 569, 571-72 (Fla. 2d DCA 2005). By its plain language, the statute caps a motor vehicle owner’s vicarious liability at $100,000 per person and $300,000 per incident for bodily injury, with additional limits for economic damages depending on the permissive user’s insurance coverage. The “per person” limit applies per person injured, not per claimant. See Lewis v. Enter. Leasing Co., 912 So.2d 349, 351 (Fla. 3d DCA 2005).
We have previously applied the term “loan” consistent with the statute’s purpose. Fireman’s Fund Ins. Co. v. Dollar Sys., Inc., 699 So.2d 1028, 1030 (Fla. 4th DCA 1997). We interpreted an insurance policy provision that excluded bodily injury “arising out of the ownership, maintenance, use, or entrustment to others of any ... auto ... loaned to any insured.” Id. at 1029. There, the insured company was sued for negligent entrustment of a vehicle that was provided to the wife of a vice president of the insured company for her personal use. Id. The car was actually owned by Southeast Toyota and provided to the insured company as a courtesy car. Id. at 1030. The insured company was not permitted to sell or lease the car to a third party, but could entrust the vehicle to whomever it chose. Id.
The evidence showed that Southeast Toyota provided the vehicle as an inducement for the insured company to purchase its products. Southeast Toyota expected to receive the car back from the insured company, although there was no set time for its return. Id. The insured company argued the exclusion did not apply because the term “loaned” contemplated a gratuitous “bailment without reward” rather than a bailment for the mutual benefit of the parties. Id. at 1031. We disagreed.
We looked to the dictionary meaning of “loan,” and noted “the most frequently encountered definition of ‘loan’ is ‘a grant of the temporary use of something.’” Id. (quoting Loan, The Random House Dictionary of the English Language (1967)). Applying the plain and ordinary definition, we concluded that the courtesy car arrangement fell within the exclusion of the policy because the arrangement was temporary and contemplated the return of the car. Id.
Here, the driver was a permissive user under the statute. The owner relinquished temporary control of the vehicle while maintaining his ownership interest. Our application of the statute under the facts in this case comports with the statute’s goal of limiting the financial responsibility of an owner vicariously liable only because of the dangerous instrumentality doctrine.
Yet, the plaintiffs argue the Second District reached a contrary conclusion in Ortiz v. Regalado, 113 So.3d 57 (Fla. 2d DCA 2013). We disagree.
There, a father and son shared legal title to a vehicle. The son was involved in a fatal collision while driving. Id. at 59. The Second District looked to Black’s Law Dictio *769 nary, which defined loan as a “grant of something for temporary use.” Id. at 60 (quoting Loan, Black’s Law Dictionary (8th ed. 2004)). It also looked to the definition of “loans,” “loaned,” or “on loan” in section 265.565(2)(b), Florida Statutes (2012), for guidance. Id. at 64 n.4. The Second District held that section 324.021(9)(b)(3) did not limit the father’s financial responsibility because he had not “loaned” the vehicle to his son in the ordinary sense of the word since he co-owned the vehicle with his son. Id. at 59-61.
Similarly, in Youngblood v. Villanueva, 141 So.3d 600, 603 (Fla. 2d DCA 2014), the Second District held the financial limitation did not apply to a vehicle owner, who had consigned his uninsured vehicle to another with instructions to sell the vehicle, with no intent to ever retake possession of the vehicle. Id. at 603.
This case does not involve either a co-owner or someone who has consigned the vehicle to another. Rather, it involves a permissive grant of temporary use of the vehicle without transfer of title. Neither Ortiz nor Youngblood, dictate the result here.
The temporary control of the car by the passenger in this case falls within the parameters of a loan. This is especially true given the legislative intent of this statute. Section 324.021(9)(b) was enacted to limit strict vicarious liability against innocent owners and lessors of motor vehicles who entrust their vehicles to another who is at fault. Lewis, 912 So.2d at 351.
The statute makes no distinction as to whether the use of the vehicle occurs with or without the presence of the owner. At the time of this accident, the owner had loaned control. of the vehicle to the passenger despite the fact that they were engaged in a joint undertaking. To hold otherwise would do an injustice to the purpose for which the legislature created this statute.
The trial court erred in denying the motion to limit the owner’s total liability under the judgment. See Lynn v. Feldmeth, 849 So.2d 481, 483 (Fla. 2d DCA 2003) (reversing trial court’s refusal to limit judgment against vehicle owner where statute limiting liability for damages caused by permissive user was applicable).[2]

Affirmed on direct appeal; reversed on the cross-appeal.

Klingensmith and Kuntz, JJ., concur.

. We granted the petition with an opinion to follow, but the issue arose at the eve of trial; our opinion issued after trial.

. If the permissive user is uninsured or has any insurance with limits less than $500,000 combined for property damage and bodily injury liability, the owner is liable for up to an additional $500,000 in economic damages. § 324.021(9)(b)(3). Here, the Richbells were awarded $1,200,000 in noneconomic damages and $50,000 in economic damages. Thus, because the driver was found 60% at fault for the accident and is uninsured or has insurance with limits less than $500,000 combined property damage and bodily injury, the judgment against the owner should be limited to $100,000 in noneconomic damages and $30,000 in economic damages (60% of $50,000), for a total of $130,000.